UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICK HARRISON, JOHN BUCKLEY III, MARGARET LOPEZ, ANDY LOPEZ, KEITH LORENSEN, LISA LORENSEN, EDWARDS LOVE, ROBERT MCTUREOUS, DAVID MORALES, GINA MORRIS, MARTIN SONGER, JR., SHELLY SONGER, JEREMY STEWARD, KESHA STIDHAM, AARON TONEY, ERIC WILLIAMS, CARL WINGATE, AND TRACY SMITH, as Personal Representative of the Estate of Rubin Smith,<br><br>Plaintiffs,<br><br>vs.<br><br>THE REPUBLIC OF SUDAN,<br><br>Defendant,<br><br>vs.<br><br>BNP PARIBAS,<br><br>Respondent. | Case No. 1:13-cv-03127 (AT)<br><br>**PETITION FOR TURNOVER ORDER AGAINST BNP PARIBAS PURSUANT TO 28 U.S.C. § 1610(g), CPLR § 5225(b) AND FEDERAL RULE OF CIVIL <u>PROCEDURE RULE 69(a)</u>**<br><br><br>**REDACTED PURSUANT TO PROTECTIVE ORDER** |

Plaintiffs, Rick Harrison, John Buckley III, Margaret Lopez, Andy Lopez, Keith Lorensen, Lisa Lorensen, Edwards Love, Robert McTureous, David Morales, Gina Morris, Martin Songer, Jr., Shelly Songer, Jeremy Steward, Kesha Stidham, Aaron Toney, Eric Williams, Carl Wingate, and Tracy Smith, as Personal Representative of the Estate of Rubin Smith ("Plaintiffs" or "Petitioners"), petition this Court to enter an Order, pursuant to 28 U.S.C. § 1610(g), New York Civil Practice Law and Rules § 5225(b), and Federal Rules of Civil Procedure Rule 69(a), directing BNP Paribas to turn over to Plaintiffs the blocked accounts in its possession belonging to certain agencies and instrumentalities of the Republic of Sudan, identified herein, in partial satisfaction of their judgment.

{10300/00326666.1}

**BACKGROUND**

On October 12, 2000, seventeen American sailors perished onboard the U.S.S. Cole in Yemen as the result of an Al Qaeda terrorist attack. The attack was made possible by the material support and assistance provided by the Republic of Sudan. As a consequence of the Sudan's participation in the development of Al Qaeda and its material support leading to this terrorist event, the United States District Court for the District of Columbia entered a final judgment in favor of Petitioners, awarding $314,705,896 (the "Judgment"). The entire principal amount of the Judgment remains unsatisfied. Petitioners registered the Judgment in this district on October 2, 2013 in the related case No. 1:12-mc-00328-P1.

The Judgment was entered pursuant to the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. As demonstrated herein, judgments obtained pursuant to the terrorism exception may be satisfied by executing against funds in which the Republic of Sudan, or any of its agencies or instrumentalities, has an interest. On September 20, 2013, this Court determined that all conditions precedent to Plaintiffs' request to execute against assets of the Republic of Sudan have been met, including providing proper notification of the default judgment to Sudan. The Court authorized Plaintiffs to seek attachment of frozen assets located within this jurisdiction using post-judgment enforcement procedures.

BNP Paribas holds funds in accounts owned by agencies of the Republic of Sudan. Pursuant to the FSIA, the Plaintiffs are entitled to execute against these funds. Accordingly, Petitioners file this turnover petition and respectfully request that the Court direct BNP Paribas to turn over the funds identified herein in satisfaction of the Judgment.[1]

---

[1] Undersigned counsel has spoken with Theresa DeLace in the Litigation Department of BNP Paribas and Ms. DeLace agreed to accept service of this Petition.

## MEMORANDUM OF LAW

Petitioners will establish the following by this memorandum: (a) any property in which Sudan or its agencies or instrumentalities have any interest is subject to attachment and execution; (b) the entities to which the funds identified in this motion belong are agencies of Sudan and, accordingly, those funds are subject to attachment and execution in satisfaction; (c) Petitioners have satisfied their obligations under CPLR § 5225 and 28 U.S.C. § 1610(c) by providing Sudan with notice of this proceeding; and (d) no OFAC license is necessary to disburse the funds subject to attachment and execution.

### a.   Property in which Sudan or its Agencies or Instrumentalities have an Interest is Subject to Turnover in Satisfaction of the Judgment.

Sudan is a designated state sponsor of terrorism and Petitioners obtained their Judgment against Sudan pursuant to 28 U.S.C. §1605A, the terrorism exception to the FSIA.  Judgment-creditors of state sponsors of terrorism are afforded a wide range of property that may be attached and executed upon in satisfaction of those judgments.  Section 1610(g) of the FSIA, enacted in 2008, provides:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, **and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is subject to attachment in aid of execution, and execution**, upon that judgment as provided in this section, regardless of--
>
> (A) the level of economic control over the property by the government of the foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g) (emphasis added).

Interpreting this provision, courts have found that judgment creditors of state sponsors of terrorism may execute against "any U.S. property in which [the terrorist state] has any interest." *See, e.g., Estate of Heiser v. Islamic Republic of Iran*, 807 F .Supp. 2d 9, 18 (D.D.C. 2011) (*citing Peterson v. Islamic Republic of Iran*, 627 F. 3d 1117, 1123 n.2 (9th Cir. 2010)). "[T]he only requirement for attachment or execution of property is evidence that the property in question is held by a foreign entity that is in fact an agency or instrumentality of the foreign state against which the Court has entered judgment." *Id*. at 19. The property Petitioners seek herein is property of an agency or instrumentality of Sudan, and property in which Sudan has an interest. Accordingly, the property identified herein is attachable under the FSIA and subject to execution.

> **b.     The Entities Identified in this Motion are Agencies and Instrumentalities of the Republic of Sudan.**

The funds Petitioners seek to attach are owned by agencies and instrumentalities of the Republic of Sudan. As defined in Part 538 of the Sudanese Sanctions and Regulations:

> The term Government of Sudan includes:
>
> (1) The state and the Government of Sudan, as well as any political subdivision, agency, or instrumentality thereof, including the Central Bank of Sudan;
> (2) **Any entity owned or controlled by the foregoing;**
> (3) Any person to the extent that such person is, or has been, or to the extent that there is reasonable cause to believe that such person is, or has been, since the effective date, acting or purporting to act directly or indirectly on behalf of any of the foregoing; and
> (4) **Any other person determined by the Director of the Office of Foreign Assets Control to be included within paragraphs (a)(1) through (a)(3) of this section**.

31 C.F.R. § 538.305 (emphasis added). Additionally, Section 1603(b) of the FSIA defines an agency or instrumentality as an entity:

> (1)   which is a separate legal person, corporate or otherwise, and
> (2)   which is an organ of a foreign state or political subdivision

>   thereof, or a majority of whose shares or other ownership interest is
>   owned by a foreign state or political subdivision thereof, and
>   (3) which is neither a citizen of a State of the United States as
>   defined in section 1332(c) and (e) of this title, nor created under the
>   laws of any third country.

28 U.S.C. § 1603(b).

The following entities fall within the definition of an agency and instrumentality of the Republic of Sudan because they are separate legal entities owned or controlled by the Republic of Sudan.



██████████, also known as ██████████████████████████, is an agency and instrumentality of the Sudanese government.  Executive Order 13067 entered by President Clinton specifically defines ██████████ as being "owned or controlled by the Government of Sudan."[2]  *See* Exhibit "A."  ██████████ also remains on the list of Specially Designated Nationals of Sudan (the "SDN List").  *See* Exhibit "B."  The SDN List is a list published by the Office of Foreign Asset Control ("OFAC") which identifies "individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries."  *See* Exhibit "C."  OFAC recognizes that ██████████ is also known as ██████████████████████████ and both entities names are agencies and instrumentalities of Sudan.  *See* Exhibit "B."  Moreover, officials with ██████████ have publicly identified the bank as "government owned."  *See* Exhibit "D."

Based on the foregoing, Petitioners submit that ██████████████████████████ is an agency and instrumentality of Sudan because the bank is a separate legal entity which is owned or controlled by the Government of Sudan, and acts as an organ of

---

[2] On December 2, 1997, and pursuant to the International Emergency Economic Powers Act (50 U.S.C. §§ 1701 and 1703), President Clinton signed Executive Order 13067 which designated Sudan as a State Sponsor of Terrorism and froze the assets of Sudan, its agencies and instrumentalities.

the Government of Sudan.  Respondent, BNP Paribas, holds accounts blocked pursuant to OFAC regulations which are owned by ███████.  Accordingly, pursuant to the FSIA, the following accounts should be immediately turned over to the Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ███████ | ███ | ███ |
| BNP Paribas | ███ | ███ | ███ |
| BNP Paribas | ███████ | ███ | ███ |
| BNP Paribas | ███████ | ███ | ███ |
| BNP Paribas | ███████ | ███ | ███ |

███ ███████████████████████████

███████████████████████ is an agency and instrumentality of the Sudanese government (the "Ministry").  Ministries and embassies of a state-sponsor of terrorism are considered agencies and instrumentalities of the state and assets owed to those ministries are subject to attachment and execution under TRIA.  *Hill v. Republic of Iraq*, No. 1:99-cv-03346 (TP), 2003 WL 21057173 (D.D.C. March 11, 2003).  Moreover, even if those ministries could be entitled to immunity under any other law or international treaty, the language of TRIA "effectively supersedes all previous laws."  *See id*. at *2 (finding TRIA preempts the Vienna Convention on Diplomatic Relations and awarding funds owned by the Embassy of Iraq and held by a garnishee bank to judgment creditors of Iraq).

Accordingly, pursuant to Section 1610(g) of FSIA and Section 201(a) of TRIA, the following accounts should be immediately turned over to the Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ███ | ███ | ███ |
| BNP Paribas | ███ | ███ | ███ |
| BNP Paribas | ███ | ███ | ███ |
| BNP Paribas | ███ | ███ | ███ |

███ ███

███ is an agency and instrumentality of the Sudanese government. Executive Order 13067 entered by President Clinton specifically defines ███ as being "owned or controlled by the Government of Sudan." *See* Exhibit "A." ███ is also ███. *See* Exhibit "E." The objectives of ███ under the ███ Act of 2002 are performing governmental functions such as issuing currency and consulting with the Ministry of Finance and National Economy to issue monetary and financing policies. *Id*. ███ also remains on the list of Specially Designated Nationals of Sudan (the "SDN List"). *See* Exhibit "F." The SDN List is a list published by the Office of Foreign Asset Control ("OFAC") which identifies "individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries." *See* Exhibit "C."

Based on the foregoing, Petitioners submit that ███ is an agency and

instrumentality of Sudan because ▮▮▮▮ is a separate legal entity which is owned or controlled by the Government of Sudan, and acts as an organ of the Government of Sudan.  Respondent, BNP Paribas, holds accounts blocked pursuant to OFAC regulations which is owned by ▮▮▮▮.  Accordingly, pursuant to the FSIA, the following accounts should be immediately turned over to the Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |
| BNP Paribas | ▮▮▮▮ | ▮▮▮▮ | ▮▮▮▮ |

▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮, formerly known as ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ is an agency and instrumentality of Sudan.  Executive Order 13067 entered by President Clinton specifically defines ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as being "owned or controlled by the Government of Sudan."  *See* Exhibit "A."  On August 2, 2004, the United States Department of Treasury officially recognized that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ changed its name and the Department of Treasury now recognizes it as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Exhibit "G."

Additionally, Farmers Commercial Bank remains on the list of Specially Designated Nationals of Sudan (the "SDN List").  *See* Exhibit "H."  The SDN List is a list published by the Office of Foreign Asset Control ("OFAC") which identifies "individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries."  *See* Exhibit "C."

Based on the foregoing, Petitioners submit that ▮▮▮▮▮▮▮▮▮▮▮▮ is an agency

and instrumentality of Sudan because the bank is a separate legal entity which is owned or controlled by the Government of Sudan.  Respondent, the National Bank of Egypt, holds an account blocked pursuant to OFAC regulations which is owned by ▮▮▮▮▮.  Accordingly, pursuant to the FSIA, the following account should be immediately turned over to the Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ▮▮▮ | ▮▮ | ▮▮ |

▮▮▮▮▮ is an agency and instrumentality of Sudan.  Executive Order 13067 entered by President Clinton specifically defines ▮▮▮ as being "owned or controlled by the Government of Sudan."  *See* Exhibit "A."  In 1970, ▮▮▮ was acquired by the government of Sudan.  *See* Exhibit "I."  Although a ▮ ownership interest in the ▮▮▮ was sold in ▮ to ▮▮▮, the accounts which Plaintiffs seek turned over were blocked in ▮ and ▮, prior to the sale.  Pursuant to 31 C.F.R. § 515.203, any attempt to change ownership of a blocked account is null and void.  Accordingly, the following blocked accounts remain owned by the Sudanese government and should be turned over to Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ▮▮▮ | ▮▮ | ▮▮ |
| BNP Paribas | ▮▮▮ | ▮▮ | ▮▮ |

■               ███████████████████████████████

███████████████████████████████████ is an agency and instrumentality of Sudan.  ██████ remains on the list of Specially Designated Nationals of Sudan (the "SDN List").  *See* Exhibit "J."  The SDN List is a list published by the Office of Foreign Asset Control ("OFAC") which identifies "individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries."  *See* Exhibit "C."  Based on the foregoing, Petitioners submit that ██████ is an agency and instrumentality of Sudan because the bank is a separate legal entity which is owned or controlled by the Government of Sudan, and acts as an organ of the Government of Sudan.  Respondent, BNP Paribas, holds accounts blocked pursuant to OFAC regulations which is owned by ██████.  Accordingly, pursuant to the FSIA, the following accounts should be immediately turned over to the Petitioners in satisfaction of their judgment:

| **Respondent Bank** | **Account Beneficiary** | **Blocking Date** | **Value** (as of June 30, 2012) |
|---|---|---|---|
| BNP Paribas | ███████ | ██████ | ██████ |
| BNP Paribas | ███████ | ██████ | ██████ |
| BNP Paribas | ███████ | ██████ | ██████ |

### c. Petitioners Have Satisfied Their Obligations under CPLR § 5225 and 28 U.S.C. § 1610(c) by Providing Sudan with Notice of this Proceeding.

In post-judgment proceedings to enforce a money judgment in federal court, execution procedures "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69. Under New York law, CPLR § 5225 provides that a judgment holder may commence a special proceeding[3] against a third-party in possession of a debtor's funds and:

> where it is shown that the judgment debtor is entitled to the possession of such property . . . the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

CPLR § 5225(b); *see also United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F.Supp. 367 (S.D.N.Y. 1997) (holding to obtain payment of a judgment from a third party in possession of debtor's property, creditor must show (1) that debtor has interest in the property that creditor seeks to attach, and (2) either that debtor is entitled to possession of property, or that creditor's rights are superior to those of the possessing party). The statute also requires notice to be provided to the judgment debtor to allow for possible intervention. *See* CPLR § 5225(b).

On May 31, 2013, Plaintiffs filed a Motion for Entry of Order Finding Sufficient Time has Passed to Seek Attachment and Execution of Defendant/Judgment Debtor's Assets and Authorizing Plaintiffs to Attach Defendant/Judgment Debtor's Assets Within This Jurisdiction Pursuant to 28 U.S.C. § 1610(c) (the "1610(c) Motion"). In the 1610(c) Motion, Petitioners demonstrated that they strictly complied with all requirements under the FSIA for providing

---

[3] Courts in this Circuit have found that the initiation of a "special proceeding" is not required in federal court and judgment-creditors can instead file a motion for turnover. *See, e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law.").

proper notice to Sudan. On September 20, 2013, this Court granted the 1610(c) Motion and concluded that Petitioners provided proper notification of the default judgment to Sudan. Accordingly, Petitioners have satisfied their obligations to provide notice under CPLR § 5225.

Following entry of the Judgment by the District Court for the District of Columbia, Petitioners served the Office of Foreign Asset Control ("OFAC") of the Department of the U.S. Treasury with a subpoena seeking a list of all financial institutions holding assets in the United States that are blocked due to a nexus with the Government of the Republic of Sudan. Prior to providing its response, OFAC through the Department of Justice demanded that a protective order be entered governing the disclosure of information provided in response to Petitioners' subpoena. The Petitioners agreed to OFAC's demand and a protective order was provided to the Court and entered on August 15, 2012. (*See Harrison, et al. v. Republic of Sudan,* Case No. 10-cv-01689 (D.D.C.) at ECF No. 47).

In its response to Petitioners' subpoena, OFAC identified a number of financial institutions holding assets of the Defendant, including Respondent, BNP Paribas. After receiving information from OFAC that BNP Paribas was holding assets of the Defendant in its New York branch, Petitioners issued a subpoena to BNP Paribas, requesting detailed information regarding the assets of the Defendant in its possession. BNP Paribas responded to Petitioners by providing information regarding frozen accounts within its possession, identifying the accounts that are the subject of this turnover petition. (*See* BNP Paribas's Response to Information Subpoena and Restraining Notice attached as Exhibit "K"). As described in detail above, BNP Paribas is holding property that belongs to an agency and instrumentality of the Republic of Sudan. Accordingly, pursuant to Fed.R.Civ.P. 69(a), CPLR § 5225(b), and 28 U.S.C. 1610(g), the subject property must be turned over to Petitioners in partial satisfaction of their Judgment.

>    **d.    An OFAC License is Not Necessary and No Notice is Required to the Agencies and Instrumentalities.**

The funds that are the subject of this motion are in accounts frozen pursuant to OFAC regulations because the funds are owned by an agency of Sudan, a state sponsor of terrorism.  In certain circumstances, the Department of Treasury requires an OFAC license to release funds held in an OFAC-blocked account.  However, the United States has officially taken the position that no OFAC license is necessary to release blocked funds to judgment creditors of a terrorist party; rather, a court order is sufficient.  In *Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411 (S.D.N.Y. 2013), the United States submitted a Statement of Interest concluding that "in the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC."  *Id*. at 422.[4]  The United States took the same position in *Weininger v. Castro*, 432 F. Supp. 2d 457 (S.D.N.Y. 2006).  Accordingly, the Court in *Heiser* concluded that an OFAC license was not necessary to release the OFAC blocked funds to the Heiser judgment creditors.  Moreover, Petitioners note that a copy of this Petition is being submitted to OFAC as required by 31 C.F.R. § 501.605.

Additionally, the agencies and instrumentalities identified in this motion are "not a necessary party" to this proceeding, and no notice is required to them.  *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011).  The Court in *Heiser* denied a request to implead an Iranian agency and instead concluded that "the FSIA does not require any provision of special notice to [the agency]."  *Id*. at 23.  The Court found that the FSIA only provides that a copy of the default judgment be served on the defendants and there is no requirement to serve additional post-judgment motions.  *Id*.  Further, the Court held that "[t]he explicit exclusion of

---

[4] TRIA, the Terrorism Risk Insurance Act, was the precursor to Section 1610(g) of the FSIA. Section 1610(g) greatly expanded the categories of property that can be attached by judgment-creditors of state sponsors of terrorism.  *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 18 (D.D.C. 2011).

attachments and executions under § 1610(g) from the notice requirement is further evidence that ***Congress did not intend to require service of garnishment writs on agencies or instrumentalities of foreign states responsible for acts of state-sponsored terrorism under § 1605A.***" *Id.* (emphasis added). This Court has already determined that Sudan has been properly notified of the default judgment. Accordingly, notice to the agencies and instrumentalities of this petition for turnover is not required.

## CONCLUSION

The Petitioners have satisfied all procedural requirements for the turnover of the funds listed above. Pursuant to the FSIA, these funds are subject to execution to satisfy the outstanding judgment. The Petitioners respectfully request that this Court enter an Order directing BNP Paribas to turn over to Petitioners the funds identified in this motion to the extent necessary to satisfy this judgment.

Dated: October 28, 2013

_____
Edward H. Rosenthal, Esq.
Beth I. Goldman, Esq.
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175

Brandon R. Levitt
Andrew C. Hall, Esq.*
HALL, LAMB AND HALL P.A.
2665 South Bayshore Drive, PH1
Miami, Florida 33133
Tel.: (305) 374-5030
Fax: (305) 374-5033
* admitted *pro hac vice*

*Attorneys for Plaintiffs/Petitioners*

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the forgoing was filed electronically on the Court's ECF System and delivered via U.S. mail on this ___ day of October, 2013 to:

Republic of Sudan
Ali Ahmed Karti
Minister of Foreign Affairs
Embassy of the Republic of Sudan
2210 Massachusetts Avenue NW
Washington, DC 20008

Theresa DeLace
BNP Paribas
Litigation/Legal Investigations Department
787 Seventh Avenue
New York, NY 10013
(and via email to theresa.delace@us.bnpparibas.com)

Chief Counsel
Office of Foreign Assets Control
U.S. Department of the Treasury
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

                /s/ Edward H. Rosenthal