courts to foreign national immediate family members of victims of terrorism, the law of the forum state, the District of Columbia, should provide the rule of decision.

1. Domestic Law

As in Dammarell, the choice of law analysis here points away from the place of the injury, and toward applying the laws of a United States forum. First, no clear conflict of law is present between the laws of the forum (District of Columbia) and the laws of Kenya and Tanzania. Like District of Columbia law, Kenyan law allows immediate family members to recover for their emotional distress. See Pl.'s Att. B, Kenyan Legal Opinion. Tanzanian law also permits immediate family members to recover for some emotional injuries. Tanzanian Probate and Administration of Estates Act, ¶ 33 (Lexis 2010). When "the laws of the different jurisdictions . . . would produce the identical result on the facts presented," USA Waste, 954 A.2d at 1032, it tilts the balance of this Court's choice of law analysis towards domestic law.

Second, to the extent that United States law and the law of Kenya and Tanzania (or another foreign jurisdiction) conflict, the District of Columbia's "governmental interests" choice of law test in state-sponsored terrorism cases strongly favors the application of United States law over foreign law. Although "[t]he law of a foreign country has provided the cause of action in some cases arising out of mass disasters that occurred on foreign soil," Dammarell, 2005 WL 756090, at *19 (citing Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1004 (9th Cir. 1987) (applying Polish law to airplane crash occurring in Poland), and Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China, 923 F.2d 957, 962-64 (2d Cir. 1991) (applying Chinese law to airplane crash occurring in China)), such a result is less appropriate in state-sponsored terrorism-related cases. In terrorism cases, "[t]he United States has a unique interest in having its domestic law — rather than the law of a foreign nation — used in the determination of damages in a suit involving

such an attack." Holland v. Islamic Republic of Iran, 496 F. Supp. 2d 1, 22 (D.D.C. 2005) (citing Restatement (Third) of Foreign Relations Law § 402(3) (1987)).

Here, just as in Dammarell, "the particular characteristics of this case heighten the interests of a domestic forum and diminish the interest of the foreign state. The injuries in this case are the result of a state-sponsored terrorist attack on a United States embassy and diplomatic personnel. The United States has a unique interest in its domestic law, rather than the law of a foreign nation, determining damages in a suit involving such an attack." Dammarell, 2005 WL 756090, at *20; see also Restatement (Third) of Foreign Relations Law § 402(3) (1987) (recognizing that the United States has an interest in projecting its laws overseas for "certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests"). These considerations "elevate the interests of the United States to nearly its highest point." Dammarell, 2005 WL 756090, at *20; see also Kaiser-Georgetown Cmty. Health Plan, 491 A.2d at 509 n.10 (suggesting that unless a foreign state has a greater interest in the application of its law than the forum state, the interests of efficiency only serve to further "tilt the balance in favor of applying the law of the forum state"). Hence, the "governmental interest" prong of the District of Columbia choice of law analysis counsels against applying the law of Kenya and Tanzania, or other foreign laws, and suggests that domestic law should control.   Cf. Estate of Doe, 2011 WL 3585963, at *17.

  2. District of Columbia Law

In addition to the strong governmental interest in applying United States law in this case, the interests of uniformity of decision among the foreign national family members points to the application of the law of the forum. Most of these plaintiffs are domiciled in Kenya and Tanzania, although some are domiciled in other countries.   In previous FSIA decisions, this Court has

applied the laws of the several domiciliary states. See, e.g., Dammarell, 2005 WL 756090, at *21. Here, however, the interests of uniformity provided by the law of the forum state, which also has a significant interest in the underlying events, provides the most appropriate choice of law for all foreign national family members who lack a federal cause of action. See Kaiser-Georgetown Cmty. Health Plan, 491 A.2d at 509 n.10 ("'The forum State's interest in the fair and efficient administration of justice' together with the 'substantial savings [that] can accrue to the State's judicial system' when its judges are 'able to apply law with which [t]he[y are] thoroughly familiar or can easily discover,' tilt the balance in favor of applying the law of the forum." (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 326 & n.14 (1981)).

In the recent amendments to the FSIA, Congress has sought to strengthen enforcement of United States terrorism laws and to extend their protections to foreign nationals who are employees of United States embassies targeted by terrorists and their immediate family members, as well as to correct the problem of disparity among the various state laws regarding recovery of emotional distress by family members. See Estate of Doe, 2011 WL 3585963, at *18. As discussed above, Congressional desire to promote uniformity does not, by itself, create a federal cause of action for non-United States national family members where the statutory text fails to do so. But efficiency and uniformity are appropriate and meaningful factors in a choice of law analysis. Without doubt, applying District of Columbia law will provide greater uniformity of result, as individual plaintiffs domiciled in different states and foreign nations will all be subject to the same substantive law. Although "the D.C. Court of Appeals has emphasized that concerns of uniformity and familiarity cannot prevail when another location otherwise has 'a significantly greater interest than does the District' in the cause of action," Dammarell, 2005 WL 756090, at *20 (citing Mims v. Mims, 635 A.2d 320, 324-25 (D.C. 1993)), the recent amendments — and the

43

stated goal of those amendments to promote uniformity — serve to increase the interest in applying District of Columbia substantive law to this case.

The District of Columbia's connection to the terrorist attacks in this case further supports this choice of law conclusion. To be sure, the 1998 embassy bombings took place in Kenya and Tanzania, the nationalities and domiciles of the various victims and plaintiffs are disparate and varied, and the defendants have no connection to the United States. But a unifying factor in this case is that all of plaintiffs' claims derive from employment with a federal agency headquartered in the District of Columbia, the seat of the federal government. The application of District of Columbia substantive law best promotes the United States' interest in applying domestic law rather than the law of a foreign nation, Congress's intent to promote uniformity of result, and the District of Columbia's real connection to the attacks in this case. See Estate of Doe, 2011 WL 3585963, at *19. Hence, this Court will apply the law of the District of Columbia to plaintiffs' claims that do not arise under the federal cause of action at § 1605A(c).

III.   CONCLUSION

For the foregoing reasons, final judgment on liability will be entered in favor of plaintiffs and against defendants. Plaintiff's claims, under federal[3] or state law, will be referred to a special master, who will receive evidence and prepare proposed findings and recommendations for the

---

3 For plaintiffs' federal claims under § 1605A(c), "[t]he Court is presented with the difficulty of evaluating these claims under the FSIA-created cause of action, which does not spell out the elements of these claims that the Court should apply." Valore, 700 F. Supp. 2d at 75. Hence, the Court "is forced . . . to apply general principles of tort law — an approach that in effect looks no different from one that explicitly applies federal common law"; but "because these actions arise solely from statutory rights, they are not in theory matters of federal common law." Heiser, 659 F. Supp. 2d at 24; see also Bettis v. Islamic Republic of Iran, 315 F.3d 325, 333 (D.C. Cir. 2003) (discussing that the term "federal common law" under the FSIA "seems to us to be a misnomer" because "these actions are based on statutory rights"). District courts thus look to Restatements, legal treatises, and state decisional law "to find and apply what are generally considered to be the well-established standards of state common law, a method of evaluation which mirrors — but is distinct from — the 'federal common law' approach." Heiser, 659 F. Supp. 2d at 24.

disposition of each individual claim in a manner consistent with this opinion. A separate order will be issued on this date.

/s/

JOHN D. BATES
United States District Judge

Dated: November 28, 2011