UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICK HARRISON, JOHN BUCKLEY III, MARGARET LOPEZ, ANDY LOPEZ, KEITH LORENSEN, LISA LORENSEN, EDWARDS LOVE, ROBERT MCTUREOUS, DAVID MORALES, GINA MORRIS, MARTIN SONGER, JR., SHELLY SONGER, JEREMY STEWARD, KESHA STIDHAM, AARON TONEY, ERIC WILLIAMS, CARL WINGATE, AND TRACY SMITH, as Personal Representative of the Estate of Rubin Smith,<br>　　　　　　　　　　Plaintiffs,<br>vs.<br>THE REPUBLIC OF SUDAN, ET AL.,<br>　　　　　　　　　　Defendant,<br>vs.<br>CREDIT AGRICOLE CORPORATE & INVESTMENT BANK,<br>　　　　　　　　　　Respondent. | Case No. 1:13-cv-03127 (AT)<br><br>**REDACTED PURSUANT TO PROTECTIVE ORDER** |

**RESPONSES AND OBJECTIONS OF CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK TO PLAINTIFFS' PETITION FOR TURNOVER ORDER**

Crédit Agricole Corporate and Investment Bank, New York Branch ("CA-CIB"), by its undersigned counsel, Cleary Gottlieb Steen & Hamilton LLP, hereby responds and objects to plaintiffs' petition, dated December 18, 2013, for a turnover order against CA-CIB (the "Petition").

1. In the Petition, plaintiffs seek turnover of certain assets located in six separate accounts and totaling approximately ▓▓▓▓ (as of June 29, 2012), plus accrued interest, blocked by CA-CIB pursuant to regulations promulgated by the United States Department of Treasury Office of Foreign Assets Control ("OFAC"). Plaintiffs allege in the Petition that the Republic of Sudan or its agencies or instrumentalities have an interest in the blocked accounts.

2. For the reasons stated below, CA-CIB requests a stay – likely to be a short

one – pending the Second Circuit's resolution of cases that are fully briefed and argued and that will speak to the legal issues in the Petition.

3. CA-CIB is a neutral entity to the assets, and CA-CIB does not claim those assets for itself.

4. Consistent with the requirement in *Walters v. Industrial and Commercial Bank of China, Ltd.*, that a plaintiff must obtain a court order under 28 U.S.C. § 1610(c) authorizing execution as to "specifically identified property" prior to any turnover of funds taking place, plaintiffs here must satisfy their burden of demonstrating their entitlement as a matter of law to turnover of specific funds in which the Republic of Sudan or its agencies or instrumentalities have an ownership interest. *See* 651 F.3d 280, 291 (2d Cir. 2011).

5. As to the following accounts, totaling ▮▮▮▮ (as of June 29, 2012), plus accrued interest (the "Unobjectionable Accounts"), CA-CIB does not object to the Petition. The Unobjectionable Accounts hold Electronic Funds Transfers ("EFTs") blocked pursuant to OFAC regulations in which agencies or instrumentalities of the Republic of Sudan were the originating entities and CA-CIB acted as the intermediary bank. As the D.C. Circuit recently held, "claims on an interrupted funds transfer ultimately belong to the originator," *Heiser v. Islamic Republic of Iran*, 735 F.3d 934, 941 (D.C. Cir. 2013), and CA-CIB therefore does not object to the Petition as to the Unobjectionable Accounts. *See id.* ("If the intermediary bank is prohibited from completing a transfer, then the originator is subrogated to its bank's right to a refund.").

| Account No. | Blocking Date | Value ($) (as of June 29, 2012) |
|---|---|---|
| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| ▮▮▮ | ▮▮▮ | ▮▮▮ |

6. As to the following accounts, totaling ▮▮▮▮ (as of June 29, 2012), plus accrued interest (the "Objectionable Accounts"), CA-CIB objects and respectfully submits that the Court should hold the Petition in abeyance or deny it outright. Turnover is not warranted because with respect to each of the below EFTs, the Sudanese agency or instrumentality alleged to have an interest in the funds is the intended beneficiary of the EFT or the intended beneficiary's bank, and "claims on an interrupted funds transfer ultimately belong to the originator, not the beneficiary or its bank." *Id.*

| Account No. | Blocking Date | Value ($) (as of June 29, 2012) |
|---|---|---|
| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| ▮▮▮ | ▮▮▮ | ▮▮▮ |

7. Similar to the D.C. Circuit's decision in *Heiser*, in *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, this Court held that whether a terrorist state owns blocked assets subject to execution under the Terrorism Risk Insurance Act of 2002 can only be resolved through reference to Article 4A of the Uniform Commercial Code. 867 F. Supp. 2d 389, 399-400 (S.D.N.Y. 2011) ("[T]he interest of an originator or a beneficiary in a midstream EFT falls short of property ownership."); *see also* N.Y. U.C.C. Art. 4A-503. In contrast, the court in *Hausler v. JPMorgan Chase Bank, N.A.*, held that a judgment creditor of a terrorist state would be entitled to execute upon assets blocked pursuant to OFAC regulations regardless of whether the EFTs were owned by the judgment debtor. 845 F. Supp. 2d 553, 571-73 (S.D.N.Y. 2012).

8. Both *Calderon-Cardona* and *Hausler* are on appeal before the Second Circuit. *See Hausler*, Nos. 12-1264 & 12-1272 (2d Cir.); *Calderon-Cardona*, No. 12-75 (2d Cir.). The parties have fully briefed the issues, and the appeals were heard in tandem by the Second Circuit on February 11, 2013.

9. Because courts in this District are divided on this issue and the D.C. Circuit's recent decision in *Heiser* held that blocked funds are owned by the originating entity, there is a question as to whether the Republic of Sudan owns the assets in the Objectionable Accounts. CA-CIB therefore requests a stay pending resolution of this issue by the Second Circuit so that any turnover order is free from legal doubt and safe from collateral attack.

10. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Courts typically consider five factors in deciding whether to grant a stay: (1) the interests of the plaintiffs in proceeding expeditiously as balanced against the prejudice to the plaintiffs if delayed; (2) the interests of and burden on the defendants; (3) the court's interests; (4) the interests of non-parties; and (5) the public interest. *Wing Sing Prods. (BVI) Ltd. v. Simatelex Manufactory Co.*, No. 01-cv-1044(RJH)(HBP), 2005 WL 912184, at *1 (S.D.N.Y. Apr. 19, 2005) (citing *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

11. Here, the factors support a stay pending resolution of the legal issues on appeal. First, a stay will not prejudice plaintiffs as they will receive the funds in the Unobjectionable Accounts within ten (10) days of a turnover order entered by this Court, and the funds in the Objectionable Accounts will remain blocked pursuant to OFAC regulations for the duration of a stay. As discussed above, because the *Calderon-Cardona* and *Hausler* appeals were fully briefed and argued nearly a year ago, CA-CIB requests only a stay – likely to be brief – until the Second Circuit issues its decisions regarding these appeals. Second, denying a stay will burden CA-CIB, a garnishee bank with no personal interest in the funds at issue, by exposing it to potential claims for improperly turning over the funds in the Objectionable Accounts. This burden is especially significant if the Second Circuit, like the D.C. Circuit in

4

*Heiser*, rules that interrupted EFTs are the property of the originator, rather than the beneficiary or its bank. *See* 735 F.3d at 941. Finally, a stay will avoid burdening the Court, plaintiffs, and potentially competing claimants with litigation over the Objectionable Accounts.

12. Courts in this District have granted stays in nearly identical contexts pending the Second Circuit's rulings in *Calderon-Cardona* and *Hausler*. *See Villoldo v. Credit Suisse AG, New York Branch*, No. 13-cv-02401-LTS, Dkt. No. 22 (S.D.N.Y. June 6, 2013) (granting a stay where petitioners seek turnover of blocked funds in satisfaction of their judgment against the Republic of Cuba pending the Second Circuit's decisions in *Calderon-Cardona* and *Hausler*); *Estate of Heiser v. Deutsche Bank Trust Co. of the Ams.*, 11-cv-1608(AJN), 2012 WL 2865485, at *12 (S.D.N.Y. July 10, 2012) (staying an effort to enforce a judgment against the Iranian government pending the Second Circuit's decisions in *Calderon-Cardona* and *Hausler*); *see also Sikhs for Justice v. Nath*, 10-cv-2940(RWS), 2012 WL 4328329, at *22 (S.D.N.Y. Sept. 21, 2012) (staying plaintiffs' claim where a pending Supreme Court decision would settle many questions of fact and law before the court); *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 429 n.39 (S.D.N.Y. 2005); *Goldstein v. Time Warner New York City Cable Grp.*, 3 F. Supp. 2d 423, 438 (S.D.N.Y. 1998) (holding that judicial efficiency favors a stay pending a decision in another case on appeal that will resolve relevant legal issues).

13. Accordingly, CA-CIB respectfully requests that the Court hold the Petition in abeyance with respect to the Objectionable Accounts pending the Second Circuit's decision in the above-referenced coordinated appeals, or, alternatively, deny the Petition with respect to the Objectionable Accounts.

Dated: December 19, 2013
    New York, New York

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:   /s/ Carmine D. Boccuzzi, Jr.
      Carmine D. Boccuzzi, Jr.
      One Liberty Plaza
      New York, New York  10006
      (212) 225-2000

      Attorneys for Respondent Crédit Agricole
      Corporate and Investment Bank