# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RICK HARRISON, ET AL.                          )
                                               )
                    Plaintiffs,                )        Case No. 1:13-cv-03127 (PKC)
                                               )
v.                                             )        **AMENDED OMNIBUS**
                                               )        **PETITION FOR TURNOVER**
REPUBLIC OF SUDAN,                             )        **ORDER**
                                               )
                    Defendant,                 )
_____        )
                                               )
RICK HARRISON, ET AL.                          )
                                               )
                    Petitioners,               )
                                               )
v.                                             )
                                               )
AMERICAN EXPRESS TRAVEL RELATED                )
SERVICES, CO.; BANCO DO BRASIL, S.A.           )
BANK OF AMERICA; BANK OF BARODA,               )
NEW YORK BRANCH; BANK OF CHINA,                )
NEW YORK BRANCH; BANK OF NEW YORK              )
MELLON; BANK OF TOKYO – MITSUBISHI             )
UFJ TRUST COMPANY; BARCLAYS BANK               )
PLC; CITIGROUP INC.; COMMERZBANK AG            )
CREDIT AGRICOLE CORPORATE &                    )
INVESTMENT BANK; CREDIT SUISSE                 )
SECURITIES (USA) LLC; DEUTSCH BANK AG          )
NEW YORK; DEUTSCHE BANK TRUST CO.              )
AMERICAS; DOHA BANK; FEDERAL                   )
RESERVE BANK OF NEW YORK; HABIB                )
AMERICAN BANK; HSBC BANK, USA, N.A.;           )
INTERAUDI BANK; INTESA SANPAOLO                )
S.P.A.; JP MORGAN CHASE & CO.; PNC             )
BANK, N.A.; RBS CITIZENS, N.A.; SOCIETE        )
GENERALE; STANDARD CHARTERED                   )
BANK; STATE BANK OF INDIA; SUMITOMO            )
MITSUI BANKING CORP.; THE ROYAL BANK           )
OF SCOTLAND N.V.; UNITED BANK                  )
LIMITED; WELLS FARGO BANK, N.A.,               )
                                               )
                    Respondents/Garnishees.    )
_____        )

{10300/00356557.1}

Petitioners, by their undersigned attorneys, allege as follows:

## NATURE OF THE PROCEEDING

1.     This is a proceeding pursuant to Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2337 ("TRIA"), Section 1610(g) of the Foreign Sovereign Immunities Act ("FSIA"), and N.Y. C.P.L.R. § 5225(b), made applicable through Rule 69 of the Federal Rules of Civil Procedure.

2.     Petitioners are judgment creditors of the Republic of Sudan.  Pursuant to the TRIA and FSIA, Petitioners' judgments may be satisfied by executing against funds in which the Republic of Sudan, or any of its agencies or instrumentalities, has an interest.

3.     The U.S. Marshal levied writs of execution upon the Respondents because they were known by Petitioners to be holding assets in which the Republic of Sudan, or any of its agencies or instrumentalities, has an interest.

4.     By this action, Petitioners seek turnover of those assets towards satisfaction of their judgments.

## JURISDICTION

5.     This Court has jurisdiction over this matter under 28 U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the United States.  Supplemental jurisdiction is conferred on this Court by 28 U.S.C. § 1367(a) over any other claim that is so related to claims in this action within the Court's original jurisdiction that it will form part of the same case or controversy.  This Court possesses *in rem* jurisdiction over the blocked property that is the subject of this turnover petition.  *See* Decision and Order in *Hausler v. JPMorgan Chase Bank*, at p. 35, 09 Civ. 10289 (VM) (S.D.N.Y. Sept. 13, 2010).

{10300/00356557.1}

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (f) in that the property that is the subject of this action is believed to be situated in this district and because Respondents have offices located in this district.

## PARTIES

7.     The Petitioners are American citizens who were severely and permanently injured on October 12, 2000 as a result of the wrongful attack and bombing of the U.S.S. Cole.  The bombing of the U.S.S. Cole was an act of international terrorism as defined in 18 U.S.C. § 2331.

8.     Petitioners Rick Harrison, John Buckley, Margaret Lopez, Keith Lorensen, Edward Love, David Morales, Robert McTureous, Gina Morris, Rubin Smith, Martin Songer, Jr., Jeremy Stewart, Kesha Stidham, Aaron Toney, Eric Williams, and Carl Wingate were United States Navy sailors stationed on board the U.S.S. Cole on October 12, 2000.  As a result of the blast, these Petitioners suffered severe and permanent injuries.

9.     Petitioner Andrew Lopez is the spouse of Margaret Lopez; Petitioner Lisa Lorensen is the spouse of Keith Lorensen; and Plaintiff Shelly Songer is the spouse of Martin Songer, Jr. These Petitioners suffered severe emotional distress and mental anguish upon learning of the attack on the U.S.S. Cole and the injuries to their spouses.

10.     Petitioners hold a judgment against the Republic of Sudan entered in the District Court for the District of Columbia on March 30, 2012 for the total amount of $314,705,896. Petitioners registered the judgment in this district on October 2, 2013 in the related case, *Harrison et al. v. Republic of Sudan*, No. 1:12-mc-00328-P1.

11.     Respondent American Express Travel Related Services, Co., is a travel agency which provides financial and travel related services for consumers and companies with its headquarters in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

{10300/00356557.1}

12.     Respondent Banco Do Brasil, S.A. is a foreign banking institution incorporated and existing under the laws of Brazil with a branch office in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

13.     Respondent Bank of America, N.A., is a federally chartered bank with its headquarters located in Charlotte, North Carolina and a branch office located in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

14.     Respondent Bank of Baroda, is a foreign banking institution incorporated and existing under the laws of India with a branch office in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

15.     Respondent Bank of China, is a foreign banking institution incorporated and existing under the laws of China with a branch office in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

16.     Respondent Bank of Tokyo – Mitsubishi UFJ Trust Company, is a foreign banking institution incorporated and existing under the laws of Japan with a branch office in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

17.     Respondent Barclays Bank PLC is a foreign banking institution incorporated and existing under the laws of the United Kingdom with a branch office in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

18.     Respondent Citigroup Inc., is a federally chartered bank with its headquarters located in New York City, New York and a branch office located in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

19.     Respondent Commerzbank AG, is a foreign banking institution incorporated and existing under the laws of Germany with a branch office in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

20.     Respondent Credit Agricole Corporate & Investment Bank is a foreign banking institution incorporated and existing under the laws of France with a branch office in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

21.     Respondent Credit Suisse AG is a foreign banking institution incorporated and existing under the laws of Switzerland with a branch office in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

22.     Respondent Deutsche Bank AG New York is a New York State chartered bank that is a member of the Federal Reserve System with its principal place of business in New York.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

23.     Respondent Deutsche Bank Trust Company Americas is a New York State chartered bank that is a member of the Federal Reserve System with its principal place of business in New York.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

24.     Respondent Doha Bank is a foreign banking institution incorporated and existing under the laws of Qatar with a branch office in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

25.     Respondent Federal Reserve Bank of New York is a federally chartered bank responsible for the Second District of the Federal Reserve System with its principal place of

business in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

26.      Respondent HAB Bank (f/k/a Habib American Bank) is a New York State chartered bank that is a member of the Federal Reserve System with its principal place of business in New York.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

27.      Respondent HSBC Bank (HSBC Bank USA, N.A.) is a federally chartered bank with its headquarters located in McLean, Virginia and a branch office located in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

28.      Respondent Interaudi Bank is a New York State chartered bank that is a member of the Federal Reserve System with its principal places of business in New York and Florida.  This Respondent maintains bank accounts in these districts, including those subject to the Marshal's levy.

29.      Respondent Intesa Sanpaolo S.p.A. is a foreign banking institution incorporated and existing under the laws of Italy with a branch office in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

30.      Respondent JP Morgan Chase Bank, N.A., is a federally chartered bank with its headquarters located in Columbus, Ohio and a branch office located in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

31.      Respondent PNC Bank, N.A., is a federally chartered bank with its headquarters located in Pittsburgh, PA and a branch office located in New York City.  This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

{10300/00356557.1}

32.     Respondent RBS Citizens, N.A. is a federally chartered bank with its headquarters located in Providence, Rhode Island and a branch office located in New York City.   This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

33.     Respondent Societe Generale is a foreign banking institution incorporated and existing under the laws of the France with a branch office in New York City.   This Respondent maintains accounts in this district, including those subject to the Marshal's levy.

34.     Respondent Standard Chartered Bank is a foreign banking institution incorporated and existing under the laws of the United Kingdom with a branch office in New York City.   This Respondent maintains accounts in this district, including those subject to the Marshal's levy.

35.     Respondent State Bank of India is a foreign banking institution incorporated and existing under the laws of India with a branch office in New York City.   This Respondent maintains accounts in this district, including those subject to the Marshal's levy.

36.     Respondent Sumitomo Mitsui Banking Corporation is a foreign banking institution incorporated and existing under the laws of Japan with a branch office in New York City.   This Respondent maintains accounts in this district, including those subject to the Marshal's levy.

37.     Respondent Bank of New York Mellon is a New York state chartered bank that is a member of the Federal Reserve System with its principal place of business in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

38.     Respondent The Royal Bank of Scotland N.V. is a foreign banking institution incorporated and existing under the laws of Scotland with a branch office in New York City.   This Respondent maintains accounts in this district, including those subject to the Marshal's levy.

39.     Respondent United Bank Limited is a foreign banking institution incorporated and existing under the laws of Pakistan with a branch office in New York. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

40.     Respondent Wells Fargo Bank, N.A., is a federally chartered bank with its main office located in Sioux Falls, South Dakota and a branch office located in New York City. This Respondent maintains bank accounts in this district, including those subject to the Marshal's levy.

## BACKGROUND

41.     Petitioners are the victims of terrorism. On October 12, 2000, fifteen American sailors were severely and permanently injured onboard the U.S.S. Cole in Yemen as the result of an Al Qaeda terrorist attack. The attack was made possible by the material support and assistance provided by the Republic of Sudan. As a consequence of the Sudan's participation in the development of Al Qaeda and its material support leading to this terrorist event, the United States District Court for the District of Columbia entered a final judgment against Sudan, awarding Petitioners $314,705,896 (the "Judgment").

42.     The Judgment was entered pursuant to the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. As demonstrated herein, judgments obtained pursuant to the terrorism exception may be satisfied by executing against funds in which the Republic of Sudan, or any of its agencies or instrumentalities, has an interest.

43.     Petitioners registered the Judgment in this district on October 2, 2013 in the related case, *Harrison et al. v. Republic of Sudan*, No. 1:12-mc-00328-P1 (Doc. No. 1.).

44.     On September 20, 2013, this Court determined that all conditions precedent to Petitioners' request to execute against assets of the Republic of Sudan have been met, including providing proper notification of the default judgment to Sudan. Doc. No. 5. The Court authorized

Petitioners to seek attachment of frozen assets located within this jurisdiction using post-judgment enforcement procedures.

45.    Respondents hold accounts that have been blocked pursuant to the Sudanese Sanctions Regulations, 31 C.F.R. Part 538.  Under TRIA and FSIA, Petitioners are entitled to execute upon "blocked assets" in which the Government of Sudan or any agency or instrumentality of the Government of Sudan has an interest.  However, as explained below, if an account has been blocked pursuant to the Sudanese Sanctions Regulations, then the Government of Sudan necessarily has an interest in that account.  Accordingly, Petitioners are entitled to execute upon every blocked account held by Respondents.

46.    Attached hereto are Exhibits containing lists of assets held by each Respondent which are filed under seal pursuant to the Protective Order entered by the Court on May 19, 2014 (ECF #123) and the Order Granting Leave to File Under Seal entered by the Court on June 18, 2014 (ECF #137).  The lists bifurcate the assets into Phase I and Phase II accounts in accordance with the "Order with Respect to Giving Notice of Turnover Proceeding" approved by the Court on May 15, 2014 (ECF #120). The Exhibits are:

        Exhibit 1 – Bank of America
        Exhibit 2 – Bank of China, New York Branch
        Exhibit 3 – Bank of New York Mellon
        Exhibit 4 – Barclays Bank Plc
        Exhibit 5 – Citigroup Inc.
        Exhibit 6 – Credit Agricole Corporate & Investment Bank
        Exhibit 7 – Credit Suisse Securities (USA) LLC
        Exhibit 8 – Deutsche Bank Trust Co. Americas
        Exhibit 9 – Federal Reserve Bank of New York
        Exhibit 10 – Habib American Bank
        Exhibit 11 – HSBC Bank, USA, N.A.
        Exhibit 12 – Intesa Sanpaolo S.P.A.
        Exhibit 13 – JP Morgan Chase & Co.
        Exhibit 14 – Societe Generale
        Exhibit 15 – Standard Chartered Bank
        Exhibit 16 – State Bank of India

Exhibit 17– The Royal Bank of Scotland N.V.
Exhibit 18 – Wells Fargo Bank, N.A.

### The Relevant Provisions of TRIA and FSIA

47.     Under TRIA, FSIA, and the applicable case law, Petitioners are entitled to execute

upon any asset in which Sudan or its agencies or instrumentalities have any interest.

48.     Section 201(a) of the TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection
> (b), in every case in which a person has obtained a judgment against a terrorist party
> on a claim based upon an act of terrorism, or for which a terrorist party is not
> immune under section 1605(a)(7) of title 28, United States Code, *the blocked assets*
> *of that terrorist party (including the blocked assets of any agency or*
> *instrumentality of that terrorist party) shall be subject to execution or attachment*
> in aid of execution in order to satisfy such judgment to the extent any compensatory
> damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), 116 Stat. at 2337 (emphasis added).[1]

49.     Section 1610(g) of the FSIA, enacted in 2008, is broader than Section 201(a) of

TRIA and provides:

> [T]he property of a foreign state against which a judgment is entered under section
> 1605A, and the property of an agency or instrumentality of such a state, including
> property that is a separate juridical entity or is an interest held directly or indirectly
> in a separate juridical entity, is *subject to attachment in aid of execution, and*
> *execution, upon that judgment as provided in this section, regardless of—*
>
> (A) the level of economic control over the property by the government of the
> foreign state;
> (B) whether the profits of the property go to that government;
> (C) the degree to which officials of that government manage the property or
> otherwise control its daily affairs;
> (D) whether that government is the sole beneficiary in interest of the property; or
> (E) whether establishing the property as a separate entity would entitle the foreign
> state to benefits in United States courts while avoiding its obligations.

---

[1] Section 1603(b) of the FSIA defines an agency or instrumentality as an entity: (1) which is a separate legal
person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof,
or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision
thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and
(e) of this title, nor created under the laws of any third country.  28 U.S.C. § 1603(b).

{10300/00356557.1}

28 U.S.C. § 1610(g) (emphasis added).

50.     Interpreting these provisions, courts have found that judgment creditors of state sponsors of terrorism may execute against "any U.S. property in which [the terrorist state] has any interest." *See, e.g., Estate of Heiser v. Islamic Republic of Iran*, 807 F .Supp. 2d 9, 18 (D.D.C. 2011) (citing *Peterson v. Islamic Republic of Iran*, 627 F. 3d 1117, 1123 n.2 (9th Cir. 2010)).

## The Relevant Provisions of the Sudanese Sanctions Regulations

51.     By virtue of the statutory framework of the Sudanese Sanctions Regulations, the Government of Sudan necessarily has an interest in every blocked account held by Respondents. Accordingly, every blocked account held by Respondents is attachable and subject to execution.

52.     Part 538.301 of the Sudanese Sanction Regulations provides that the term blocked account "shall mean any account or property subject to the prohibition in § 538.201 *held in the name of the Government of Sudan or in which the Government of Sudan has an interest*." 31 C.F.R. 538.301 (emphasis added).

53.     Accounts subject to the prohibition in Part 538.201 of the Sudanese Sanctions Regulations are "*property or interests in property of the Government of Sudan*, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons." 31 C.F.R. 538.201(a) (emphasis added).

54.     The term Government of Sudan includes

(1) The state and the Government of Sudan, as well as any political subdivision, agency, or instrumentality thereof, including the Central Bank of Sudan;
(2) Any entity owned or controlled by the foregoing;
(3) Any person to the extent that such person is, or has been, or to the extent that there is reasonable cause to believe that such person is, or has been, since the effective date, acting or purporting to act directly or indirectly on behalf of any of the foregoing; and
(4) Any other person determined by the Director of the Office of Foreign Assets Control to be included within paragraphs (a)(1) through (a)(3) of this section.

31 C.F.R. § 538.305 (emphasis added).

55.     The requirements of the Sudanese Sanctions Regulations, including definitions of "blocked account" and "Government of Sudan," obligate Respondents to block only those accounts in which the Government of Sudan has an interest.  Under TRIA and FSIA, Petitioners can execute against all accounts in which the Government of Sudan has an interest.  Accordingly, every blocked account held by Respondents is subject to attachment and execution.

**Petitioners Have Satisfied Their Obligations under CPLR § 5225 and
28 U.S.C. § 1610(c) by Providing Sudan with Notice of this Proceeding**

56.     In post-judgment proceedings to enforce a money judgment in federal court, execution procedures "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  Fed. R. Civ. P. 69.  Under New York law, CPLR § 5225 provides that a judgment holder may commence a special proceeding[2] against a third-party in possession of a debtor's funds and:

> where it is shown that the judgment debtor is entitled to the possession of such property . . . the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

CPLR  § 5225(b); *see also United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.,* 988 F.Supp. 367 (S.D.N.Y. 1997) (holding to obtain payment of a judgment from a third party in possession of debtor's property, creditor must show (1) that debtor has interest in the property that creditor seeks to attach, and (2) either that debtor is entitled to possession of property, or that creditor's rights are superior to those of the possessing party).  The statute also requires notice to be provided to the judgment debtor to allow for possible intervention.  *See* CPLR § 5225(b).

---

[2] Courts in this Circuit have found that the initiation of a "special proceeding" is not required in federal court and judgment-creditors can instead file a motion for turnover.  *See, e.g., Northern Mariana Islands v. Millard,* 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under FRCP 69(a), rather than instituting a special proceeding under the New York state law.").

57.     On May 31, 2013, Plaintiffs filed a Motion for Entry of Order Finding Sufficient Time has Passed to Seek Attachment and Execution of Defendant/Judgment Debtor's Assets and Authorizing Plaintiffs to Attach Defendant/Judgment Debtor's Assets Within This Jurisdiction Pursuant to 28 U.S.C. § 1610(c) (the "1610(c) Motion").  Doc. No. 3.  In the 1610(c) Motion, Petitioners demonstrated that they strictly complied with all requirements under the FSIA for providing proper notice to Sudan.  On September 20, 2013, this Court granted the 1610(c) Motion and concluded that Petitioners provided proper notification of the default judgment to Sudan.  Doc. No. 5.  Accordingly, Petitioners have satisfied their obligations to provide notice under CPLR § 5225.  Moreover, on January 13 and 15, 2014, two attorneys appeared in this case on behalf of the Republic of Sudan.  Doc. Nos. 32, 38.

58.     Following entry of the Judgment by the District Court for the District of Columbia, Petitioners served the Office of Foreign Asset Control ("OFAC") of the Department of the U.S. Treasury with a subpoena seeking a list of all financial institutions holding assets in the United States that are blocked due to a nexus with the Government of the Republic of Sudan.  Prior to providing its response, OFAC through the Department of Justice demanded that a protective order be entered governing the disclosure of information provided in response to Petitioners' subpoena. The Petitioners agreed to OFAC's demand and a protective order was provided to the Court and entered on August 15, 2012.  (*See Harrison, et al. v. Republic of Sudan*, Case No. 10-cv-01689 (D.D.C.) at Doc. No. 47).

**An OFAC License is Not Necessary and No Notice
is Required to the Agencies and Instrumentalities**

59.     The funds that are the subject of this motion are in accounts frozen pursuant to OFAC regulations because they consist of funds in which Sudan has an interest.  In certain circumstances, the Department of Treasury requires an OFAC license to release funds held in an

OFAC-blocked account.  However, the United States has officially taken the position that no OFAC license is necessary to release blocked funds to judgment creditors of a terrorist party; rather, a court order is sufficient.  In *Heiser v. Bank of Tokyo Mitsubishi UFJ, New York Branch*, 919 F. Supp. 2d 411 (S.D.N.Y. 2013), the United States submitted a Statement of Interest concluding that "in the event a court determines that blocked assets are subject to TRIA, those funds may be distributed without a license from OFAC."  *Id.* at 422.  The United States took the same position in *Weininger v. Castro*, 432 F. Supp. 2d 457 (S.D.N.Y. 2006).  Accordingly, the Court in Heiser concluded that an OFAC license was not necessary to release the OFAC blocked funds to the Heiser judgment creditors.  Moreover, this Court has held on four occasions that no OFAC license is necessary to distribute the blocked assets.  *See* Doc Nos. 8, 20, 21, 31.

60.     Additionally, the agencies and instrumentalities that may have an interest in the blocked assets are "not a necessary party" to this proceeding, and no notice is required to them. *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 23 (D.D.C. 2011).  The Court in *Heiser* denied a request to implead an Iranian agency and instead concluded that "the FSIA does not require any provision of special notice to [the agency]."  *Id.* at 23.  The Court found that the FSIA only provides that a copy of the default judgment be served on the defendants and there is no requirement to serve additional post-judgment motions.  *Id.*  Further, the Court held that "[t]he explicit exclusion of attachments and executions under § 1610(g) from the notice requirement is further evidence that *Congress did not intend to require service of garnishment writs on agencies or instrumentalities of foreign states responsible for acts of state-sponsored terrorism under § 1605A.*"  *Id.* (emphasis added).  Moreover, this Court has already held on four occasions that no notice is required to the agencies and instrumentalities of Sudan that may have an interest in the

blocked accounts. *See* Doc Nos. 8, 20, 21, 31. Accordingly, notice to the agencies and instrumentalities of this petition for turnover is not required.

## THE NEED FOR A TURNOVER ORDER

61.     The United States government has blocked all funds in the accounts maintained with the Respondents pursuant to the Sudanese Sanctions Regulations codified at 31 C.F.R. Part 538.

62.     As a result of the Sudanese Sanctions Regulations and the provisions of the FSIA and TRIA described herein, Petitioners are unable to affect a turnover of the funds in the blocked accounts to the Marshal to satisfy their judgment without a determination that the funds in blocked accounts are subject to execution and turnover pursuant to the TRIA and FSIA.

63.     All accounts blocked pursuant to the Sudanese Sanctions Regulations and held by the Respondents are subject to attachment and execution.

64.     Upon information and belief, no adverse claimants have priority over Petitioners to the funds that are subject to the writs of execution and the Marshal's levy.

65.     To date, no release of funds from the Accounts has been made pursuant to the Marshal's levy.

66.     The Harrison Judgment has not been fully satisfied.

67.     Not more than 90 days have elapsed since the service or renewal of the writs of execution and the commencement of this proceeding.

68.     Petitioners are giving contemporaneous notice of this Amended Petition to the United States Treasury Department's Office of Foreign Asset Control by emailing the same to David Jones, Deputy Chief of the Civil Division of the United States Attorneys' Office for the Southern District of New York at: david.jones6@usdoj.gov.

{10300/00356557.1}

## RELIEF SOUGHT

WHEREFORE, the Petitioners respectfully request that the Court enter orders directing Respondents to turn over to Petitioners all accounts in their possession that are blocked pursuant to the Sudanese Sanctions Regulations, 31 C.F.R. Part 538, together with accrued interest, in partial satisfaction of Petitioners' Judgment.

Dated:   June 19, 2014

By:   /s/ Edward H. Rosenthal
      Edward H. Rosenthal, Esq.
      Beth I. Goldman, Esq.
      FRANKFURT KURNIT KLEIN & SELZ,
      P.C.
      488 Madison Ave, 10th Floor
      New York, New York 10022
      Phone: (212) 980-0120
      Fax:    (212) 593-9175

      Andrew C. Hall, Esq.*
      Brandon R. Levitt, Esq.
      HALL, LAMB and HALL, P.A.
      Grand Bay Plaza, Penthouse One
      2665 South Bayshore Drive
      Miami, Florida, 33133
      Phone: (305) 374-5030
      Fax:    (305) 374-5033
      * admitted *pro hac vice*

      *Attorneys for Plaintiffs/Petitioners*

{10300/00356557.1}