UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RICK HARRISON, et al.,

    Plaintiffs,

 - against -

REPUBLIC OF SUDAN,

    Defendant.
------------------------------------------------------------X
RICK HARRISON, et al.,

    Petitioners,

 - against -

REPUBLIC OF SUDAN,

    Respondents/Garnishees.
------------------------------------------------------------X

Case No. 13-CV-03127 (PKC)

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Petitioners, by undersigned counsel, hereby file this Memorandum of Law in Support of their Motion for Partial Summary Judgment. In support, Petitioners state:

**PRELIMINARY STATEMENT**

Through their Motion for Partial Summary Judgment, Petitioners seek the turnover of certain blocked accounts that are property of El Nilein Industrial Development Bank, an instrumentality of the Republic of Sudan.[1] El Nilein Industrial Development Bank has failed to

---

[1] The blocked accounts of El Nilein Industrial Development Bank, which are the subject of this Motion were identified in the following exhibits to Petitioners Amended Omnibus Turnover Petitioner (Dkt. No. 138): Exh. 1, Schedule A.1: 1st listed account; Exh. 3, Schedule A.1: 3rd listed

1

appear in response to the Court Ordered Notice Protocol and to two interpleader petitions filed by Respondent banks in this action. As described below, the Court should enter partial summary judgment in the Petitioners' favor as to the El Nilein Blocked Accounts, and order them to be turned over to the Petitioners in satisfaction of their Judgment, pursuant to TRIA § 201(a) and FSIA § 1610(g).

## BACKGROUND AND PROCEDURAL POSTURE

On October 12, 2000, Petitioners, fifteen American sailors, were severely and permanently injured onboard the U.S.S. Cole in Yemen as the result of an Al Qaeda terrorist attack. The attack was made possible by the material support and assistance provided by the Republic of Sudan. As a consequence of the Sudan's participation in the development of Al Qaeda and its material support leading to this terrorist event, the United States District Court for the District of Columbia entered a final judgment against Sudan, awarding Petitioners $314,705,896 (the "Judgment"). The Petitioners' Judgment was entered pursuant to the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A.

Petitioners registered the Judgment in this district on October 2, 2013 in the related case, *Harrison et al. v. Republic of Sudan*, No. 1:12-mc-00328-P1 (Dkt. No. 1.). Petitioners commenced this proceeding on May 9, 2013 in an attempt to attach certain blocked assets of Sudan in satisfaction of their Judgment. Dkt. No. 1.

On September 20, 2013, this Court determined that all conditions precedent to Petitioners' request to execute against assets of the Republic of Sudan have been met, including providing proper notification of the default judgment to Sudan. Dkt. No. 5. The Court authorized the

---

account, Schedule A.2: sole listed account; Exh. 5, Schedule A.1: 3rd and 9th listed accounts; Exh. 6, Schedule A.1: all listed accounts; Exh. 11, Schedule A.1: 2nd listed account.

Petitioners to seek attachment of frozen assets located within this jurisdiction using post-judgment enforcement procedures.

The Respondent Banks hold certain accounts that have been blocked pursuant to the Sudanese Sanctions Regulations, 31 C.F.R. Part 538. Under Section 201 of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2337 ("TRIA") and 28 U.S.C. § 1610(g) of the FSIA, Petitioners are entitled to execute upon "blocked assets" of Sudan or any agency or instrumentality of the government of Sudan.

On March 3, 2013, Petitioners filed an Omnibus Turnover Petition, seeking the turnover of blocked Sudanese assets held by more than two dozen Respondent financial institutions, including the Respondent Banks. Dkt. No. 39.

On May 15, 2014, the Court, in its Order with Respect to Giving Notice of Turnover Proceeding ("Notice Order"), established a Notice Protocol and bifurcated this proceeding into two phases. Dkt. No. 120. Phase I was established for the purpose of resolution of the Petitioners' claims as to blocked accounts worth $10,000 or more that were created to hold the proceeds of EFTs for which the Republic of Sudan, or one of its agencies and instrumentalities, may be an originator or an originating bank ("Phase I Blocked Assets"). *Id.* at p. 3. Phase II was established for the purpose of resolution of the Petitioners' claims as to blocked accounts worth $10,000 or more that were created to hold the proceeds of EFTs for which the Republic of Sudan, or one of its agencies and instrumentalities, may be a beneficiary or a beneficiary bank ("Phase II Blocked Assets"). Under the Notice Protocol, within 35 days of the then contemplated filing of the Petitioners' amended omnibus turnover petition, the Respondent financial institutions were to serve certain notice documents on potential adverse claimants advising them of the nature of the proceeding and the Court's directive to the adverse claimants to respond within 90 days by filing

with the Court written objections asserting any interest they may have in the blocked assets. *Id.* at 7-8.

On June 19, 2014, Petitioners filed an Amended Omnibus Petition for Turnover Order, again, seeking turnover of blocked assets towards satisfaction of their judgments. Dkt. No. 138. In their Amended Petition, among other blocked accounts, Petitioners sought turnover of certain blocked accounts that originated from a Sudanese banking institution, El Nilein Industrial Development Bank ("El Nilein Blocked Accounts"). Dkt. No. 138 at Exh. 1, Schedule A.1: 1st listed account; Exh. 3, Schedule A.1: 3rd listed account, Schedule A.2: sole listed account; Exh. 5, Schedule A.1: 3rd and 9th listed accounts; Exh. 6, Schedule A.1: all listed accounts; Exh. 11, Schedule A.1: 2nd listed account.

## **UNDISPUTED MATERIAL FACTS**

El Nilein Industrial Development Bank was organized by the government of the Republic of Sudan on March 8, 1993. SUMF at ¶ 12. It remained wholly owned by the government of the Republic of Sudan, until 2006, when it was partially privatized. *Id.* El Nilein Industrial Development Bank is currently operated under the name El Nilein Industrial Development Bank Group. SUMF at ¶ 14.

El Nilein Industrial Development Bank Group failed to respond as required by the Notice Protocol established Order with Respect to Giving Notice of Turnover Proceeding (Dkt. No. 120) by filing with the Court written objections asserting any interest it may have had in the blocked assets of El Nilein Industrial Development Bank sought by the Petitioners. SUMF at ¶ 18.

El Nilein Industrial Development Bank Group was served with third-party interpleader petitions in relation to Petitioners' Amended Petition for turnover of certain accounts for which El Nilein Industrial Development Bank Group was believed to have a potential claim or interest.

SUMF at ¶ 15.  By Order dated March 12, 2015, the Court instructed Respondents to seek certificates of default against all third party respondents served with Interpleader Documents who failed to timely respond.  SUMF at ¶ 16.  El Nilein Industrial Development Bank Group failed to timely respond to the interpleader petitions with which it was served and a Certificate of Default was entered against it, and a request for a second default remains pending.  SUMF at ¶ 17.

All of the El Nilein Blocked Accounts sought by the Plaintiffs were blocked during the period in which El Nilein Industrial Development Bank was wholly owned by the government of the Republic of Sudan.  SUMF at ¶ 13.

## ARGUMENT

### I. The El Nilien Blocked Accounts Are Property of a Sudanese Agency and Subject to Turnover in Satisfaction of Petitioners' Judgment.

Under TRIA, FSIA, and the applicable case law, Petitioners are entitled to execute upon any blocked asset of Sudan or its agencies or instrumentalities.

Section 201(a) of the TRIA provides that:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, United States Code, ***the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment*** in aid of execution in order to satisfy such judgment to the extent any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), 116 Stat. at 2337 (emphasis added).

Section 1610(g) of the FSIA, enacted in 2008, is broader than Section 201(a) of TRIA and provides:

> [T]he property of a foreign state against which a judgment is entered under section 1605A, and the property of an agency or instrumentality of such a state, including property that is a separate juridical entity or is an interest held directly or indirectly in a separate juridical entity, is ***subject to attachment in aid of execution, and execution, upon that judgment as provided in this section, regardless of—***

5

(A) the level of economic control over the property by the government of the foreign state;
(B) whether the profits of the property go to that government;
(C) the degree to which officials of that government manage the property or otherwise control its daily affairs;
(D) whether that government is the sole beneficiary in interest of the property; or
(E) whether establishing the property as a separate entity would entitle the foreign state to benefits in United States courts while avoiding its obligations.

28 U.S.C. § 1610(g) (emphasis added).

At the time that the El Nilein Blocked Accounts were blocked, El Nilein Industrial Development Bank was an agency or instrumentality of Sudan, as it was wholly owned by the government of Sudan. SUMF at ¶ 13; *see Kirschenbaum v. 650 Fifth Ave. and Related Props.*, 2016 WL 3916001 (2d Cir. July 20, 2016); 28 U.S.C. § 1603(b)[2].

El Nilein Industrial Development Bank Group has not appeared in these proceedings to object to turnover of the blocked accounts as required in response to the Court's Notice Protocol, nor has it responded to interpleader proceedings initiated by two of the Respondent banks, for which it is in default. Accordingly, the El Nilein Blocked Accounts are subject to turnover under TRIA § 201(a) and FSIA § 1610(g), and should be turned over to the Petitioners in satisfaction of their Judgment.

II. **The Blocked Accounts Remain Property of a Sudanese Agency.**

The Sudanese Sanctions Regulations ("SSR") prohibit any dealings in, or transfers of, property or interests in property of the Government of Sudan, including all of its agencies and instrumentalities, unless authorized by regulation, license or otherwise. 31 C.F.R. §§ 538.201(a);

---

[2] Section 1603(b) of the FSIA defines an agency or instrumentality as an entity: (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country. 28 U.S.C. § 1603(b).

538.305(a). Any transfer in violation of the SSR is "null and void." 31 C.F.R. § 538.202(a). If an entity involved in such a transfer subsequently obtains a license or other authorization, the prior transfer remains null and void "unless specifically provided in such license or authorization" that the prior transfer is authorized. 31 C.F.R. § 538.501(a).

In October 2006, a consortium of private investors led by a local Sudanese bank, Al Salam Bank ("Al Salam Consortium"), acquired a 60% interest in El Nilein Industrial Development Bank from the Sudanese government, with the Sudanese government retaining a 40% interest. Decl. of Roarke Maxwell, Esq., Exh. 1 – Decl. of Benaiah Yongo-Bure at ¶ 11. The Al Salam Consortium's purchase of a 60% interest in El Nilein Industrial Development Bank occurred at a time when El Nilein Industrial Development Bank's assets in the United States were blocked pursuant to the SSR. By virtue of the SSR, under U.S. law, this purchase of a partial interest in El Nilein Industrial Development Bank could not have included a purchase of those blocked assets. *See* 31 C.F.R. §§ 538.201(a); 538.305(a). Assuming the purchase purported to include those blocked assets, the purchase of those assets would be "null and void." 31 C.F.R. § 538.202(a). El Nilein Industrial Development Bank has not received any subsequent license or authorization specifically permitting the change in ownership of the blocked assets in this country, and so it remains null and void. 31 C.F.R. § 538.501(a). Accordingly, these blocked accounts remain property of the El Nilein Industrial Development Bank entity that has been recognized as an agency of Sudan and whose assets are subject to turnover. *See, e.g., Rux v. ABN-Amro Bank, N.V.*, No. 08-civ-6588 (AKH), 2009 WL 8660085, *4 (S.D.N.Y. April 14, 2009).

## **CONCLUSION**

For the foregoing reasons, the Court should enter partial summary judgment in the Petitioners' favor as to the El Nilein Blocked Accounts, and order them to be turned over to the Petitioners in satisfaction of their Judgment, pursuant to TRIA § 201(a) and FSIA § 1610(g).

Dated: August 26, 2016

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:/s/
    Edward H. Rosenthal, Esq.
    Nicole Bergstrom, Esq.
    488 Madison Avenue, 10th Floor
    New York, New York 10022
    Tel.: (212) 980-0120
    Fax: (212) 593-9175

HALL, LAMB AND HALL, P.A.
    Andrew C. Hall
    Roarke Maxwell
    2665 South Bayshore Drive, PH1
    Miami, Florida 33133
    Telephone: (305) 374-5030
    Fax: (305) 374-5033

*Attorneys for the Plaintiffs/Petitioners*