UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

RICK HARRISON, et al.,

        Plaintiffs,                  Case No. 1:13-cv-03127 (PKC)

   -against-

REPUBLIC OF SUDAN,

        Defendant.
───────────────────────────────────────────

RICK HARRISON, et al.,

        Petitioners,

   -against-

AMERICAN EXPRESS TRAVEL RELATED
SERVICES, CO., et al.,

        Respondents/Garnishees.
───────────────────────────────────────────

### MEMORANDUM OF LAW OF RESPONDENT
### THE BANK OF NEW YORK MELLON IN OPPOSITION TO
### <u>PETITIONERS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

LEVI LUBARSKY FEIGENBAUM &
WEISS LLP
655 Third Avenue, 27th Floor
New York, New York 10017
(212) 308-6100
*Attorneys for Respondents The Bank of
New York Mellon and JPMorgan Chase
Bank, N.A.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL POSTURE ..........................................................................................................2

THE RELEVANT FACTS .............................................................................................................3

ARGUMENT ..................................................................................................................................5

THE BLOCKED ACCOUNTS IN WHICH EL NILEIN HAS OR IS ALLEGED TO
HAVE AN INTEREST ARE NOT SUBJECT TO EXECUTION UNDER TRIA § 201(a)
OR FSIA § 1610(g) BECAUSE EL NILEIN WAS NOT AN AGENCY OR
INSTRUMENTALITY OF THE SUDAN AT THE OPERATIVE POINT IN TIME –
WHEN PETITIONERS COMMENCED THIS PROCEEDING IN MARCH 2014 ......................5

    A.    El Nilein Was Not an Agency or Instrumentality of the Sudan
         When Petitioners Commenced This Proceeding in March 2014 .............................6

    B.    The Blocked Accounts Involving El Nilein Are Not Subject to Execution
         as Assets of El Nilein as It Existed Before Its Privatization in 2006......................8

CONCLUSION.............................................................................................................................10

Respondent The Bank of New York Mellon ("BNY Mellon") submits this memorandum of law in opposition to Petitioners' motion for partial summary judgment filed on August 26, 2016. Respondents HSBC Bank USA, National Association ("HSBC"), Crédit Agricole Corporate & Investment Bank, New York Branch, Bank of America, N.A. and Citibank, N.A. ("Citibank") (collectively, with BNY Mellon, the "Banks") join in this memorandum.[1]

## PRELIMINARY STATEMENT

Petitioners' motion should be denied for the same principal reason set forth in that part of the Banks' own summary judgment motion that addresses the disputed blocked accounts involving El Nilein. Because Petitioners' judgment is against only the Republic of Sudan ("Sudan"), El Nilein's assets are available to help Petitioners execute on that judgment under § 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 (reprinted following 28 U.S.C. § 1610) ("TRIA"), or § 1610(g) of the Foreign Sovereign Immunities Act ("FSIA") *only* if El Nilein was an "agency or instrumentality" of the Sudan at the relevant point in time. And that point in time, as the Second Circuit recently established in *Kirschenbaum v. 650 Fifth Avenue and Related Properties*, No. 14-1963(L), 2016 WL 3916001, at *8, *16 (2d Cir. July 20, 2016), is the date on which Petitioners commenced this judgment enforcement proceeding – March 3, 2014. As Petitioners' own expert's declaration confirms, El Nilein, though formerly under the Sudan's control, was privatized in 2006, and its majority interest has been privately held ever since. El Nilein therefore was not an agency or

---

[1] Petitioners' motion is a procedural oddity. At the July 6, 2016 status conference with the Court, the Court directed the Banks to file summary judgment motions by August 26, 2016 as to any blocked accounts that remained in dispute by that time. The Banks collectively filed their motion on that date. But while Petitioners knew the Banks would be moving for summary judgment and knew which blocked accounts would be the subjects of that motion, they nonetheless proceeded on August 26, 2016 to file their own motion for partial summary judgment seeking the turnover of many of the same blocked accounts – all involving the Sudanese entity El Nilein Industrial Development Bank Group ("El Nilein") – that are at issue on the Banks' motion. Petitioners' motion unnecessarily complicates the parties' motion practice.

instrumentality of the Sudan at the time this proceeding was commenced, as Petitioners implicitly acknowledge. As a matter of law, accordingly, the blocked accounts in which El Nilein has or is alleged to have an interest are therefore not subject to execution under TRIA § 201 or FSIA § 1610(g).

Nor can Petitioners circumvent that conclusion by asserting, as they do in their brief (at pp. 6-7), that the blocked accounts at issue were excluded, by virtue of OFAC's Sudanese Sanctions Regulations, from the Sudan's sale in 2006 of a majority interest in El Nilein, and that those accounts therefore remain the property of El Nilein as it existed before the privatization. But the undisputed fact, as established by plaintiffs' own expert, is that the 2006 privatization was a sale of control of El Nilein, and not a sale of its assets. The same entity that owned the blocked accounts before the privatization thus owned them afterwards, and the entity that owned them afterwards was no longer an agency or instrumentality of the Sudan. The regulations on which Petitioners rely have nothing to do with a sale of all or part of the entity itself. Plaintiffs' assertion makes no sense, moreover, because the government-owned El Nilein that existed before the 2006 privatization obviously did not exist at the time this proceeding was commenced in 2014 and could not have then "owned" the blocked accounts at issue. That the Sudanese Sanctions Regulations were in effect at the time of the 2006 privatization does not change or otherwise affect the dispositive legal question here of whether El Nilein was an agency or instrumentality of the Sudan at the time this proceeding was commenced. Nor do those regulations change the undisputed fact that El Nilein lacked instrumentality status at that time.

PROCEDURAL POSTURE

The procedural posture of this proceeding has already been set forth in the Banks' own summary judgment motion, and the Banks do not repeat that discussion here. To the limited

extent the Banks have sought to clarify aspects of Petitioners' account of the procedural history in Petitioners' Statement of Undisputed Material Facts under Local Civil Rule 56.1, the Banks have done so in their accompanying "Joint Response to Petitioners' Statement of Undisputed Material Facts" (the "Joint Response").

## THE RELEVANT FACTS

The facts relevant to Petitioners' motion and the Banks' opposition thereto fall into two categories: (i) facts determinative of whether El Nilein was an agency or instrumentality of the Sudan at the time Petitioners commenced this judgment enforcement proceeding in 2014; and (ii) the facts underlying the blocked accounts, held by the Banks, in which El Nilein has or is alleged to have an interest and that are the subject of Petitioners' motion. The facts in that second category become moot once is it established that El Nilein was not an agency or instrumentality of the Sudan at the operative point in time. Still, the Banks incorporate by reference in the Joint Response their respective declarations, filed on their summary judgment motion, describing the pertinent blocked accounts that each Bank is holding. (*See* Joint Response at p. 1.) Suffice it to say that, except for one deposit account held by BNY Mellon and one held by Citibank that were both established on El Nilein's behalf, all of the blocked accounts at issue contain the proceeds of wire transfers blocked under Sudanese Sanctions Regulations and as to which El Nilein was the originator's bank. (*See* Joint Response No. 11.)

As to the first category of facts, the Banks do not dispute the facts regarding El Nilein set forth in Petitioners' Rule 56.1 Statement, including the fact that El Nilein never appeared in this proceeding despite having been served with process or having otherwise been given notice of the proceeding. The most pertinent facts bearing on whether El Nilein was an agency or instrumentality of the Sudan at the operative time come from the July 25, 2016 declaration of

3

Petitioners' expert, Benaiah Yongo-Bure ("Yongo-Bure Decl.," annexed as Exhibit 1 to the August 26, 2016 moving declaration of Petitioners' counsel, Roarke Maxwell). The Banks themselves have no firsthand knowledge of those facts (though certain information about El Nilein is publicly available on the internet), but accept them as accurate for purposes of Petitioners' motion and the Banks' own summary judgment motion.

As set forth in the Yongo-Bure declaration, the entity known as El Nilein Industrial Development Bank (referred to above and hereafter as "El Nilein") was established in 1993 through the merger of two then-existing public banks, El Nilein Bank and The Industrial Development Bank of Sudan. (Yongo-Bure Decl. ¶11) Between 1993 and 2006, El Nilein was a public bank "under the control of the government of Sudan and the Central Bank of Sudan." (*Id.*) In 2006, however, "a consortium of private investors led by a local Sudanese bank, Al Salam Bank, acquired a 60% interest in [El Nilein] from the Sudanese government, with the Sudanese government retaining a 40% interest." (*Id.*) El Nilein, despite the change in its ownership structure in 2006, continues to operate under the name El Nilein Industrial Development Bank Group. (*Id.*)

Of particular importance on Petitioners' motion is what Petitioners do not say in the motion. Nowhere do they try to establish, and nowhere have they otherwise alleged, that El Nilein was an agency or instrumentality of the Sudan at any time after its privatization in 2006, including at the time Petitioners commenced this proceeding in March 2014. (*See* Joint Response at Nos. 12-14.)

ARGUMENT

THE BLOCKED ACCOUNTS IN WHICH EL NILEIN HAS OR IS
ALLEGED TO HAVE AN INTEREST ARE NOT SUBJECT TO EXECUTION
UNDER TRIA § 201(a) OR FSIA § 1610(g) BECAUSE EL NILEIN WAS NOT AN
AGENCY OR INSTRUMENTALITY OF THE SUDAN AT THE OPERATIVE POINT
IN TIME – WHEN PETITIONERS COMMENCED THIS PROCEEDING IN MARCH 2014

As the United States Supreme Court has long held, the language of Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In that circumstance, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Here, for Petitioners to execute on the blocked accounts in which El Nilein has or is alleged to have an interest, they must meet their burden of establishing the "element essential" to their claim: that El Nilein was an "agency or instrumentality" of the Sudan, under TRIA or FSIA § 1603, at the time this proceeding was commenced.[2] Petitioners have not met that burden, mandating that their motion be denied.

---

[2] The FSIA, 28 U.S.C. § 1603(b), defines an "agency or instrumentality of a foreign state" to mean "any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (e) of this title, nor created under the laws of any third country."

As established by the Second Circuit in *Kirschenbaum*, an agency or instrumentality of a "terrorist party" under TRIA is one that "(1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, *or* (3) was owned, controlled, or directed by the terrorist party." *Kirschenbaum*, 2016 WL 3916001, at *15 (emphasis in original).

A. El Nilein Was Not an Agency or Instrumentality of the Sudan
   When Petitioners Commenced This Proceeding in March 2014

The inquiry whether the blocked accounts involving El Nilein are subject to execution under TRIA § 201(a) or FSIA § 1610(g) begins with the Second Circuit's decisions in *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1002 (2d Cir. 2014), *cert. denied*, No. 14A1175, 2016 WL 207446 (U.S. Jan. 19, 2016), and *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014), *cert. denied sub nom. Hausler v. JPMorgan Chase Bank, N.A.*, No. 14A1180, 2016 WL 207447 (U.S. Jan. 19, 2016), which collectively hold that a blocked wire transfer held by an intermediary bank is subject to execution under TRIA § 201 or FSIA § 1610(g), as property of a judgment debtor such as the Sudan, "only where either the state itself or an agency or instrumentality thereof (such as a state-owned financial institution) transmitted the EFT directly to the bank where the EFT is held pursuant to the block." *Calderon-Cardona*, 770 F.3d at 1002; *see also Hausler*, 770 F.3d at 212. Although *Calderon-Cardona* and *Hausler* addressed blocked wire transfers, the same fundamental principle underlying those decisions – that an asset must be the property of the judgment debtor or one of its agencies or instrumentalities to be subject to execution under TRIA or the FSIA – applies as well to the two blocked deposit accounts held by BNY Mellon and Citibank.

At issue on Petitioners' motion, however, as on that part of the Banks' motion that addresses the blocked accounts involving El Nilein, is not whether El Nilein has an adequate property interest in those accounts.[3] Rather, the issue is whether El Nilein was an agency or instrumentality of the Sudan at the operative point in time – an issue that Petitioners never address. Instead, in arguing that the blocked accounts involving El Nilein are subject to

---

[3] The one exception is the blocked account held by HSBC, which is immune from execution for the independent reason that the "direct transmitter" requirement established in *Calderon-Cardona* and *Hausler* is not met as to that account. (*See* Dkt. No. 449.)

execution under TRIA § 201(a) and FSIA § 1610(g), Petitioners note only that those accounts were blocked before El Nilein was privatized, at times when it was wholly owned by and thus an agency or instrumentality of the Sudan; and that, because El Nilein never appeared in this proceeding to object to the turnover of those accounts, the accounts may therefore be turned over to Petitioners. (Brief at p. 6)

Petitioners' argument fails because it neglects to take into account the controlling law in this Circuit on when an entity's agency or instrumentality status is determined for purposes of judgment enforcement proceedings under TRIA § 201(a) or FSIA § 1610(g). That law, as noted, was articulated by the Second Circuit in *Kirschenbaum*, (2d Cir. July 20, 2016), which holds that "an entity's agency or instrumentality status under the [FSIA] is determined *at the time of the filing of the complaint*," 2016 WL 3916001, at *8 (internal quotation marks and citation omitted)) (emphasis added), and the determination of whether an entity was "sufficiently owned, controlled, or directed by [a foreign terrorist state] to render it an agency or instrumentality of a terrorist party under the TRIA" must likewise be analyzed as of the time "*Plaintiffs' complaints were filed*" (*id.* at *16) (emphasis added).

There is no dispute that El Nilein was not an agency or instrumentality of the Sudan at the time Petitioners commenced this proceeding in March 2014, or even at the time they commenced their action in the United States District Court for the District of Columbia, in 2010, in which they obtained their judgment against the Sudan. Plaintiffs' own expert, Mr. Yongo-Bure, confirms as much in his declaration, in which, it bears repeating, he states (at ¶11) that "[i]n October 2006, a consortium of private investors . . . acquired a 60% interest in El Nilein Industrial Development Bank from the Sudanese government, with the Sudanese government retaining a 40% interest."

7

Since October 2006, accordingly, the Sudan has lacked the majority ownership interest in El Nilein that is required under FSIA § 1603(b) for El Nilein to be an agency or instrumentality of the Sudan under the FSIA. Nor have Petitioners presented any evidence to suggest that El Nilein continued to be an agency or instrumentality, under § 1603 or TRIA, for any reason after October 2006. Because El Nilein is not an agency or instrumentality of the Sudan, its assets – here, the blocked accounts held by the Banks in which El Nilein has an interest – are not subject to execution under TRIA § 201(a) or FSIA § 1610(g) to help satisfy Petitioners' judgment against the Sudan. On that ground alone, Petitioners' motion should be denied, and its claims for the turnover of the funds in the blocked accounts involving El Nilein should be dismissed on the Banks' summary judgment motion.

B. The Blocked Accounts Involving El Nilein Are Not Subject to Execution
as Assets of El Nilein as It Existed Before Its Privatization in 2006

In what amounts to an effort to circumvent the conclusion mandated by *Kirschenbaum*, Petitioners alternatively argue that the Al Salam Consortium's acquisition in 2006 of a 60% ownership interest in El Nilein from the Sudan could not have included the blocked accounts at issue because, under 31 C.F.R. §§ 538.201(a) and 538.202(a), any purported transfer of those accounts by the Sudan would have been "null and void." (Brief at 7) "[T]hese blocked accounts," Petitioners conclude, "remain property of the El Nilein Industrial Development Bank entity" that existed before the 2006 privatization and that "has been recognized as an agency of Sudan." (*Id.*)

That argument, however, is baseless as a matter of fact, law and common sense. There is nothing in the record that remotely suggests, much less establishes, that the Al Salam Consortium's acquisition of a majority ownership interest was through anything but a sale of El Nilein's stock shares or their equivalent, as distinct from an asset sale. The acquisition

8

accordingly involved not the transfer of assets from one legal entity to a separate legal entity, but rather a change in the ownership structure of a single entity – El Nilein. As a result, 31 C.F.R. §§ 538.201(a) and 538.202(a) – which together render "null and void" any attempted transfer of Sudanese assets located within the United States – did not apply to the 2006 privatization.[4] Nor, in all events, do those regulations override or otherwise change as a legal matter the dispositive inquiry mandated here by *Calderon-Cardona*, *Hausler* and *Kirschenbaum*: Whether El Nilein was an agency or instrumentality of the Sudan when Petitioners commenced this proceeding in March 2014. The answer to that question, an undisputed "no," is unaffected by the fact that the Sudanese Sanctions Regulations in question were in effect in 2006.

Perhaps above all, and as dictated by simple logic and common sense, the El Nilein that was wholly owned by the Sudan before the 2006 privatization is the same entity that was majority-owned by the Al Salam Consortium at the time this proceeding was commenced in 2014 (and at all times since 2006). The government-owned entity no longer existed in 2014 and accordingly could not have then "owned" the blocked accounts at issue on Petitioners' motion. That El Nilein was an agency or instrumentality of the Sudan before the 2006 privatization is irrelevant to whether it continued to be one in 2014, when Petitioners filed this action. The Sudanese Sanctions Regulations in effect in 2006 could not prevent a change in El Nilein's ownership and therefor do not change the fact that El Nilein was no longer majority owned by the Sudan in 2014.

---

[4] Petitioners' reliance on those regulations is therefore misplaced. 31 C.F.R. § 538.201(a) provides that "no property or interests in property of the Government of Sudan, *that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of U.S. persons*, including their overseas branches, may be transferred, paid, exported, withdrawn or otherwise dealt in." (Emphasis added) And 31 C.F.R. § 538.202(a) provides that such a transfer is "null and void." The privatization of El Nilein, however, was not a transfer of the blocked accounts, or any interests therein, that are *located within the United States*. It involved only a transfer of ownership of El Nilein, a separate legal entity that is not located in the United States or controlled by U.S. persons.

9

CONCLUSION

For the foregoing reasons, Petitioners' motion for partial summary judgment should be denied.

Dated: New York, New York
September 16, 2016

LEVI LUBARSKY FEIGENBAUM & WEISS LLP

By: /s/ *Steven B. Feigenbaum*
    Steven B. Feigenbaum
    Gregory P. Feit
655 Third Avenue, 27th Floor
New York, New York 10017
(212) 308-6100
*Attorneys for Respondents/Garnishees The Bank of New York Mellon and JPMorgan Chase Bank, N.A.*

PHILLIPS LYTLE LLP

By: /s/ *Sean C. McPhee*
    Sean C. McPhee
The New York Times Building
620 Eighth Avenue, 23rd Floor
New York, New York 10018-1405
(212) 759-4888
smcphee@phillipslytle.com
*Attorneys for Respondent/Garnishee HSBC Bank USA, National Association*

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: /s/ *Carmine D. Boccuzzi*
    Carmine D. Boccuzzi
One Liberty Plaza
New York, New York 10006
(212) 225-2000
cboccuzzi@cgsh.com
*Attorneys for Respondent/Garnishee Crédit Agricole Corporate & Investment Bank, New York Branch*

DAVIS POLK & WARDWELL LLP

By: /s/ *James L. Kerr*
    Michael S. Flynn
    James L. Kerr
    Craig Cagney
450 Lexington Avenue
New York, New York 10017
(212) 450-4552
James.kerr@davispolk.com
Craig.cagney@davispolk.com
*Attorney for Respondent/Garnishee Bank of America, N.A.*

DAVIS WRIGHT TREMAINE LLP

By: /s/ *Christopher Robinson*
    Sharon Schneier
    Christopher Robinson
1251 Avenue of the Americas
New York, New York 10020
(212) 489-8230
sharonschneier@dwt.com
chrisrobinson@dwt.com
*Attorneys for Respondent/Garnishee Citibank N.A.*