```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
RICK HARRISON, et al.,                            :
                                                  :          Case No. 13-CV-03127 (PKC)
                Plaintiffs,                       :
                                                  :
      - against -                                 :
                                                  :
REPUBLIC OF SUDAN,                                :
                                                  :
                Defendant.                        :
                                                  :
-----------------------------------------------------------X
                                                  :
RICK HARRISON, et al.,                            :
                                                  :
                Petitioners,                      :
                                                  :
      - against -                                 :
                                                  :
REPUBLIC OF SUDAN,                                :
                                                  :
                Respondents/Garnishees.           :
                                                  :
-----------------------------------------------------------X
```

**PETITIONERS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Petitioners, by undersigned counsel, hereby file this Reply Memorandum of Law in Support of their Motion for Partial Summary Judgment. In support, Petitioners state:

**PRELIMINARY STATEMENT**

In the Memorandum of Law of Respondent Bank of New York Mellon ("BNYM") in Opposition to Petitioners' Motion for Partial Summary Judgment ("Opposition Memorandum") (Dkt. No. 471), it asserts that the Court should deny summary judgment to Petitioners on the turnover of certain blocked accounts that were transmitted by El Nilein Industrial Development Bank ("Blocked Assets"), in electronic funds transfers ("EFTs"), because they believe El Nilein

Industrial Development Bank is no longer an agency or instrumentality of Sudan. BNYM's argument is based on the false premise that under the Second Circuit's recent decision in *Kirschenbaum v. 650 Fifth Ave. and Related Props.*, No. 14 Civ. 1963, 2016 WL 3916001 (2d Cir. July 20, 2016), the date on which the Court must determine whether El Nilein Industrial Development Bank was an agency or instrumentality of Sudan, for the purposes of ordering turnover of the Blocked Assets under TRIA § 201A, is the time of the filing of either this proceeding (2013) or the initial D.C. District Court case (2010). Further, BNYM asserts that the Declaration of Petitioners' Expert Benaiah Yongo-Bure, establishes that El Nilein Industrial Development Bank was not an agency or instrumentality of Sudan at the time this proceeding was commenced in 2013.

First, BNYM's reading of *Kirschenbaum* improperly conflates the Second Circuit's analysis of the issue of the district court's jurisdiction to hear the case with its analysis of the determination of whether the assets at issue were subject to turnover under § 201(a) of TRIA. The Second Circuit, in its analysis of the whether the district court had subject matter jurisdiction over the action stated that the point in time for making the determination of whether an entity agency or instrumentality status under 28 U.S.C. § 1603(b) was at the time the suit was filed. *Id.* at *8 ("Because **jurisdiction** 'depends upon the state of things at the time ... the action [is] brought,' [] an entity's agency or instrumentality status **under the FSIA** 'is determined at the time of the filing of the complaint,' [] and not necessarily "as of the time an alleged tort or other actionable wrong occurred[.]") (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003)) (internal citations omitted, emphasis added). Nowhere in its analysis of whether the blocked assets were subject to turnover under §201(a) of TRIA did the Second Circuit look to the status of the defendants at the time of the filing of the suit. *Id.* at *16-19. Rather, it clearly stated that the issue was determined

2

by the entity's status under the executive order blocking Iran's assets that was issued almost four years after the commencement of the case. *Id.* at *19 ("[R]egardless of whether that entity is included on the SDN List or Executive Order 13,599 List, if Defendants satisfy Executive Order 13,599's definition of 'Government of Iran,' their assets are blocked and, therefore, subject to attachment under TRIA § 201."). BNYM has critically misapprehended the holdings in *Kirschenbaum* and its argument, therefore, fails as a whole.

Secondly, although Petitioners strongly contend that 2010 or 2013 are not the relevant dates on which ownership of the Blocked Assets should be determined for the purposes of turnover, the Yongo-Bure Declaration in no way establishes that the government of Sudan did not own or control El Nilein Industrial Development Bank in the year 2013. As described below, Prof. Yongo-Bure did not address this issue in either his research or in his Declaration.

Finally, BNYM contends that, despite the fact that the Sudanese Sanctions Regulations ("SSRs") prohibit any dealings in, or transfers of, blocked property or interests in blocked property of the government of Sudan, including all of its agencies and instrumentalities, unless authorized by regulation, license or otherwise, the government of Sudan could have transferred its interest in the blocked assets at issue by selling part of its interest in its instrumentality, El Nilein Industrial Development Bank, to private parties. BNYM's argument ignores the plain language of the SSRs which explicitly prohibits the unlicensed transfer of an "interest" in blocked property. *See* 31 C.F.R. §§ 538.201(a); 538.305(a). Moreover, as the Petitioners' previously stated, permitting Sudan to sell its interest in blocked assets to private parties without requiring a license would eliminate the effectiveness of the blocking regulations by giving Sudan a way to circumvent them at will. Understandably, there is absolutely no authority for such a position. Because Sudan did not seek a license to transfer the Blocked Assets at issue, the partial privatization of El Nilein

3

Industrial Development Bank, in 2006, is not relevant to the issue of whether the Blocked Assets at issue are subject to turnover under TRIA § 201A or 28 U.S.C. § 1610(g).

For the reasons stated herein, BNYM's arguments should be rejected and partial summary judgment entered in favor of the Petitioners.

## ARGUMENT

### I. The Petitioners' Right to Execute Against Assets of El Nilein Industrial Development Bank Under TRIA Does Not Depend on the Issue of Ownership or Control of El Nilein Industrial Development Bank at the Time of the Filing of Petitioners' Case

BNYM makes the identical argument to that made by HSBC Bank USA, N.A. in its Motion for Summary Judgment (Dkt. No. 450) asserting that, pursuant to the Second Circuit's decision in *Kirschenbaum*, the date on which the Court must determine whether El Nilein Industrial Development Bank was an agency or instrumentality of Sudan, for the purposes of ordering turnover of the Blocked Assets under TRIA § 201A, is the time of the filing of the proceeding. As described below, BNYM's contentions regarding the Second Circuit's holding in *Kirschenbaum* are incorrect and unsupported by the text of the opinion.

In *Kirschenbaum*, the plaintiffs filed suit against certain entities that it alleged were agencies or instrumentalities of Iran seeking, *inter alia*, turnover of an office building located in Manhattan, in satisfaction of a judgment that they had previously obtained against Iran for injuries they had suffered in an act of state sponsored terrorism. *Id.,* at *1. At the time the plaintiffs filed suit, in 1998, the assets of Iran within the United States had not been blocked by the U.S. government. *Id.,* at *3, *5. Iran's assets were subsequently blocked, in 2012, by executive order, under the International Emergency Economic Powers Act. *Id.,* at *3.

The *Kirschenbaum* defendants unsuccessfully moved for summary judgment, asserting that the district court lacked subject matter jurisdiction over the action, under the FSIA and TRIA,

because they were not agencies and instrumentalities of Iran and their assets were not blocked for the purposes of turnover, under TRIA § 201A. *Id.,* at *5. After the denial of the defendants' motion, the plaintiffs succeeded in obtaining a summary judgment order directing turnover of the defendants' property. *Id.*

On appeal from the award of summary judgment, the Second Circuit reversed the district court's decision. *Id.,* at *19. It found that, despite evidence that Iran had previously controlled the defendants at one time, there was insufficient evidence in the record to establish that the defendants were agencies and instrumentalities of Iran at the time the suit was filed. *Id.,* at *16. Quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003), the Second Circuit noted that as to the 28 U.S.C. § 1603(b) of the FSIA, jurisdiction "depends upon the state of things at the time ... the action [is] brought." *Id.,* at 8. Later in the opinion, again addressing the question of jurisdiction, the Second Circuit noted that questions of fact remained as to whether the defendants were agencies and instrumentalities of Iran at the time of the filing of the complaint for the purposes of TRIA. *Id.,* at *16.

The Second Circuit then engaged in a separate analysis as to whether the assets at issue were blocked property within the meaning of TRIA § 201A. *Id.,* at *16-19. It held that if the defendants "satisfy Executive Order 13,599's definition of "Government of Iran," their assets are blocked and, therefore, subject to attachment under TRIA § 201." *Id.,* at *19. However, it determined summary judgment was inappropriate because there was insufficient evidence to ascertain whether the defendants were agencies and instrumentalities of Iran, such as to have fallen within the ambit of the executive order. *Id.* It is clear from the foregoing that the issue of whether the defendants' assets were blocked property within the meaning of TRIA depended not on whether they were agencies or instrumentalities at the time of the filing of the complaint, but rather

5

whether they were agencies or instrumentalities at the time of the executive order that blocked Iran's property within the United States. *Id.*

Moreover, nothing in *Kirschbaum* suggests that ownership of blocked assets can change, for the purposes of turnover under TRIA, between the time of the assets being blocked and the filing of a complaint seeking the assets turnover. Indeed, the property at issue in *Kirschenbaum* had not yet been blocked at the time of the filing of the complaint in that case. BNYM's reading of *Kirschenbaum* is critically flawed and should not be accepted by the Court.

II. **The Yongo-Bure Declaration Does Not Establish the Issue of Ownership or Control of the Blocked Assets at the Time of the Filing of Petitioners' Case, Under TRIA.**

Again BNYM follows the argument stated by HSBC in its Motion for Summary Judgment and asserts that the Declaration of Plaintiffs' Expert Benaiah Yongo-Bure establishes that it is an undisputed fact that El Nilein Industrial Development Bank was not an agency or instrumentality of Sudan at the time of the filing of the Petitioners' Case, for the purposes of execution under TRIA § 201A and FSIA § 1610(g). The Yongo-Bure Declaration in no way deals with the issue of El Nilein Industrial Development Bank's status at the time of the filing of this action or the original complaint, nor did his research extend to that time period. BNYM's assertion that the Declaration can be relied on for this point is fundamentally incorrect, as there is no evidence that establishes that the ownership of El Nilein Industrial Development Bank has remained unchanged during that period.

BNYM relies on the following statement from Prof. Yongo-Bure's Declaration to establish that El Nilein Industrial Development Bank was not an agency or instrumentality of Sudan at the time of the filing of this action:

> In October 2006, a consortium of private investors led by a local Sudanese bank, Al Salam Bank, acquired a 60% interest in El Nilein Industrial Development Bank

from the Sudanese government, with the Sudanese government retaining a 40% interest.

Opposition Memorandum at p. 4.

Nothing in the foregoing statement establishes either that the government of Sudan did not continue to control El Nilein Industrial Development Bank after it was partially privatized in 2006, nor what the government's ownership interest was in the years 2010 or 2013. As is clearly stated in the Yongo-Bure Declaration, Prof. Yongo-Bure was tasked by the Petitioners with determining whether the entities at issue were owned by the government of Sudan at the time their assets were blocked in the United States. *See* Declaration of Benaiah Yongo-Bure at ¶ 8, Exhibit 1 to Corrected Statement of Undisputed Facts (Dkt. No. 470). At paragraph 8 of the Declaration, Prof. Yongo-Bure states: "I was retained by the Plaintiffs in this case for the purpose of researching certain Sudanese entities to determine whether they were owned by the Republic of Sudan at the time of various electronic funds transfers that are the subject of litigation in this matter." Accordingly, in relation to his Declaration, at no time was Prof. Yongo-Bure engaged in research as to whether Sudan owned or controlled El Nilein Industrial Development Bank in the years 2010 or 2013. *See* Petitioners' Counter-Statement of Undisputed Material Facts at ¶ 23 (Dkt. No. 470).

Further, the issue of whether an entity is an agency or instrumentality of a terrorist party under TRIA § 201A is not limited to the terrorist party's ownership or control of the entity. Recently in *Kirschenbaum*, the Second Circuit described the various ways in which an entity could be determined to be an agency or instrumentality, stating as follows:

> To demonstrate that Defendants are "agencies or instrumentalities" of a terrorist party under the TRIA, therefore, Plaintiffs must show that each Defendant (1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party.

2016 WL 3916001, at *15. Nothing in the Yongo-Bure Declaration can be construed as a statement establishing any of the foregoing issues for the years 2010 or 2013.

From the foregoing, it is clear that BNYM's cannot rely on the Yongo-Bure Declaration to establish that El Nilein Industrial Development Bank was not an agency or instrumentality of Sudan in the years 2010 and 2013.

### III. The Blocked Accounts Remain Property of a Sudanese Agency.

Because the SSRs prohibit any dealings in, or transfers of, property or interests in property of the government of Sudan, including all of its agencies and instrumentalities, unless authorized by regulation, license or otherwise, the purchase of a partial interest in El Nilein Industrial Development Bank could not have included a purchase of the Blocked Assets at issue in this case. *See* 31 C.F.R. §§ 538.201(a); 538.305(a). Any attempt to purchase the Blocked Assets would be "null and void" and would not be respected by the Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 538.202(a). The government of Sudan did not receive a license or authorization specifically permitting the change in ownership of the Blocked Assets from OFAC, and thus any purported transfer of its interest remains null and void. 31 C.F.R. § 538.501(a). The Blocked Assets, therefore, remain the property of the government of Sudan.

BNYM makes the hollow argument that the entity that existed at the time of the blocking of the Blocked Assets no longer exists because of the Bank's partial privatization, and as such it is illogical to say that it still holds an interest in the assets. BNYM ignores the fact that for all purposes El Nilein Industrial Development Bank, as a wholly owned and controlled entity, was a part of the government of Sudan. The government of Sudan remains in existence and subject to the SSRs. In reality the issue is not whether El Nilein Industrial Development Bank could sell its shares to private parties, but whether the government of Sudan could divest its interest in Blocked

8

Assets located in the United States. As stated above, it could not do so, and to permit it to do so would be to undermine the sanctions regime itself. There is no authority for BNYM's position that Sudan could freely alienate its ownership interest in the Blocked Assets at issue, and its argument must be rejected accordingly.

## CONCLUSION

For the foregoing reasons, Petitioners' Motion for Partial Summary Judgment should be granted and the Blocked Assets at issue turned over forthwith.

Dated: September 30, 2016

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: /s/ Edward H. Rosenthal
Edward H. Rosenthal, Esq.
Nicole Bergstrom, Esq.
488 Madison Avenue, 10th Floor
New York, New York 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175

HALL, LAMB AND HALL, P.A.
Andrew C. Hall
Roarke Maxwell
2665 South Bayshore Drive, PH1
Miami, Florida 33133
Telephone: (305) 374-5030
Fax: (305) 374-5033

*Attorneys for the Plaintiffs/Petitioners*