UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICK HARRISON, et al.,

                Plaintiff,

        -against-

REPUBLIC OF SUDAN,

                Defendant.
-----------------------------------------------------------x
RICK HARRISON, et al.

                Petitioners,
-against-
AMERICAN EXPRESS TRAVEL RELATED
SERVICES, CO.; BANCO DO BRASIL, S.A.;
BANK OF AMERICA; BANK OF BARODA,
NEW YORK BRANCH; BANK OF CHINA,
NEW YORK BRANCH; BANK OF NEW YORK
MELLON; BANK OF TOKYO – MITSUBISHI
UFJ TRUST COMPANY; BARCLAYS BANK
PLC; CITIGROUP INC.; COMMERZBANK AG;
CREDIT AGRICOLE CORPORATE &
INVESTMENT BANK; CREDIT SUISSE
SECURITIES (USA) LLC; DEUTSCH BANK AG
NEW YORK; DEUTSCHE BANK TRUST CO.
AMERICAS; DOHA BANK; FEDERAL
RESERVE BANK OF NEW YORK; HABIB
AMERICAN BANK; HSBC BANK, USA, N.A.;
INTERAUDI BANK; INTESA SANPAOLO
S.P.A.; JP MORGAN CHASE & CO.; PNC
BANK, N.A.; RBS CITIZENS, N.A.; SOCIETE
GENERALE; STANDARD CHARTERED
BANK; STATE BANK OF INDIA; SUMITOMO
MITSUI BANKING CORP.; THE ROYAL BANK
OF SCOTLAND N.V.; UNITED BANK
LIMITED; WELLS FARGO BANK, N.A.,

                Respondents/Garnishees.
-----------------------------------------------------------x

13-cv-3127 (PKC)

MEMORANDUM
AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2-16-17

CASTEL, U.S.D.J.

Petitioners bring this action for the turnover of assets allegedly belonging to the Republic of Sudan and its agencies and instrumentalities in the custody of respondent garnishee banks to satisfy petitioners' unsatisfied judgment against the Republic of Sudan. They seek enforcement of the judgment under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1610(g) ("FSIA") and the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2337 ("TRIA"). The respondent garnishee banks oppose the turnover of some of these assets. Petitioners and respondents have cross moved for summary judgment with respect to the turnover of assets belonging to El Nilein Industrial Development Bank held by respondents. El Nilein has not appeared. For the reasons set forth in this opinion, the Court grants respondents' motion for summary judgment and denies petitioners' motion for summary judgment.

BACKGROUND AND PROCEDURAL HISTORY

On October 12, 2000, the U.S.S. Cole was attacked while being refueled in Aden, Yemen, by operatives of the al-Qaeda terrorist network killing 17 American sailors and injuring 39. Petitioners are fifteen sailors in the U.S. Navy who were severely injured as the result of the attack. (Pet'rs' Mem. in Opp., 3.) Petitioners obtained a judgment from the U.S. District Court for the District of Columbia in the aggregate amount of $314,705,896 against the Republic of Sudan, which provided assistance to al-Qaeda in connection with the attack on the U.S.S. Cole. (Id.; Resp'ts' CS ¶¶ 2-3.) Petitioners commenced this proceeding on May 9, 2013, in an attempt to attach certain blocked assets to satisfy that judgment. (Dkt. No. 1.) Petitioners seek to attach certain assets that were blocked by the garnishee banks pursuant to the Sudanese Sanctions Regulations ("SSRs") promulgated by the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"). See 31 C.F.R. 538 et seq.

On June 19, 2014, petitioners filed an Amended Omnibus Turnover Petition for Turnover Order (the "Petition") against several dozen garnishee banks (Dkt. No. 138). The Petition seeks the turnover of funds in certain blocked accounts, originating from El Nilein and other entities, under the TRIA, the FSIA, and N.Y. C.P.L.R. §5225(b), made applicable through Rule 69, Fed. R. Civ. P. (Id.) El Nilein was served with third-party interpleader petitions, (Resp'ts' CS ¶ 15), failed to timely respond to those petitions, (id. at ¶ 17), and a Clerk's Certificate of Default was entered, (id.)

Respondents HSBC Bank USA, National Association ("HBUS"), The Bank of New York Mellon, Credit Agricole Corporate & Investment Bank, New York Branch, Bank of America, N.A., and Citibank N.A. move for summary judgment against petitioners with respect to the turnover of funds originating from El Nilein. (Dkt. No. 446.) Petitioners move for summary judgment with respect to the turnover of the same funds. (Dkt. No. 460.)

The only evidence regarding El Nilein's status as an agency or instrumentality of Sudan that the parties rely on is a declaration from petitioners' expert witness in Sudanese economics, Professor Benaiah Yongo-Bure. (Maxwell Decl. in Opp. to Resp'ts' Mot. for Summ. J., Ex. 1; McPhee Decl. in Supp. of Resp'ts' Mot. for Summ. J., Ex. C) ("Yongo-Bure Declaration.") According to Professor Yongo-Bure, El Nilein "was created through the merger of two existing public banks. . . on March 8, 1993." (Yongo-Bure Declaration ¶ 11.) From 1993-2006 El Nilein operated under the control of the government of Sudan and engaged in commercial banking and industrial development lending. (Id.) Professor Yongo-Bure further states:

> In October 2006, a consortium of private investors led by a local Sudanese bank, Al Salam Bank, acquired a 60% interest in El Nilein Industrial Development Bank from the Sudanese government, with the Sudanese government retaining a 40%

> interest. Following partial privatization, El Nilein Industrial
> Development Bank continues to operate under the name El Nilein
> Industrial Development Bank Group.

(Id.)

The funds in the remaining HBUS account subject to the Petition are the proceeds of electronic funds transfers ("EFTs") that originated with El Nilein, were transmitted through an intermediary entity incorporated under the laws of a foreign jurisdiction, and ultimately to HBUS, where the EFTs were blocked pursuant to the SSRs. (Pet'rs' CS to HBUS ¶¶ 16-22; Peters Decl. in Supp. of Pet'rs' Mot. For Summ. J. ¶¶ 8-9; Snell Decl. in Supp. of Pet'rs' Mot. For Summ. J. ¶¶ 4-5.)

On January 17, 2017, after both motions for summary judgment were fully briefed, OFAC amended the SSRs "to authorize all prohibited transactions, including transactions involving property in which the Government of Sudan has an interest." Sudanese Sanctions Regulations, 82 Fed. Reg. 4793 (codified at 31 C.F.R. § 538.540) (the "Amendment to the SSRs," subsequently the "Amended SSRs"). On January 26, 2017, the Court ordered all parties to address the impact of the Amendment on the pending motions for summary judgment. Respondents (Dkt. No. 515) and petitioners (Dkt. No. 512) made submissions to the Court.

LEGAL STANDARD

On a motion for summary judgment, the Court views all evidence of record in the light most favorable to plaintiff as the non-moving party, and draws all reasonable inferences in plaintiff's favor. See Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief as a matter of law. Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(3), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Rule 56(a), Fed. R. Civ. P.

DISCUSSION

I. <u>Jurisdictional Standards.</u>

Petitioners bring this action to attach property belonging to El Nilein under the TRIA and FSIA. Both statutes provide jurisdiction over property belonging to judgment debtors or the agencies or instrumentalities of judgment debtors. The FSIA provides jurisdiction over sovereign states while the TRIA provides jurisdiction over terrorist parties, which under certain circumstances may also be sovereign states. Section 201(a) of the TRIA provides:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment

> to the extent of any compensatory damages for which such terrorist
> party has been adjudged liable.

Pub. L. No. 107-297, 116 Stat. 2337. Section 1610(g) of the FSIA provides:

> [T]he property of a foreign state against which a judgment is
> entered under [28 USCS § 1605A], and the property of an agency
> or instrumentality of such a state, including property that is a
> separate juridical entity or is an interest held directly or indirectly
> in a separate juridical entity, is subject to attachment in aid of
> execution, and execution, upon that judgment as provided in this
> section. . . .

28 U.S.C.S. § 1610(g)(1). Thus, for a district court to have jurisdiction to attach property to satisfy a judgment under either the FSIA or the TRIA, the property must belong to either a foreign state (FSIA), or a terrorist party (TRIA), or an agency or instrumentality of either a foreign state or a terrorist party.

There is no dispute that Sudan, the judgment debtor, is both a sovereign state and a terrorist party within the meaning of the statutes. However, the parties dispute whether El Nilein, whose assets petitioners seek to attach, is an agency or instrumentality of Sudan. The fact that El Nilein has not appeared does not relieve petitioners of their burden to show that the attachment of the funds held by respondents is permissible under the TRIA or the FSIA.

II. The Summary Judgment Motions are not Moot.

In response to the Court's January 26, 2017 Order directing the parties to identify how the Amendment to the SSRs affected the pending motions for summary judgment, respondents contend that their motion for summary judgment should be granted, and petitioners' motion denied, based on the arguments previously submitted in connection with the motions, irrespective of the Amendment. (Dkt. No. 515.) Alternatively, respondents argue that their motion for summary judgment should be granted, and petitioners motion denied as moot, due to the fact that the Amendment to the SSRs unblocked the funds subject to the Petition, citing

Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi, 556 U.S. 366, 376-77 (2009).

Petitioners argue that even if the funds subject to the Petition are no longer blocked assets pursuant to the TRIA, the funds are still subject to turnover under the FSIA. (Dkt. No. 512.) Respondents argue that "all assets that the [b]anks had previously blocked pursuant to the SSRs may now be unblocked, and the wire transfers or other transactions underlying the blocked accounts are all now authorized and may be processed." (Dkt. No. 515.)

The Court concludes that the Amendment to the SSRs does not provide an independent ground on which to grant summary judgment to respondents and does not moot petitioners' motion for summary judgment. The FSIA, not addressed by Elahi, provides an independent jurisdictional basis for turnover of the funds. See Elahi, 556 U.S. at 369. No party has come forward with affidavits showing, for example, that the funds at issue are no longer held by the respondents. The Court's jurisdiction over the action thus remains intact and the Amendment to the SSRs is not dispositive of the motions for summary judgment. The Second Circuit has noted that FSIA jurisdiction in actions for the turnover of property is to be determined at the filing of the complaint, rather than at the time of ruling on a dispositive motion. See Kirschenbaum v. 650 Fifth Avenue and Related Properties, 830 F.3d 107, 126 (2d Cir. 2016).

The Court concludes that because the funds at issue on these motions are not assets of an agency or instrumentality of Sudan under the FSIA, the respondents' motion for summary judgment should be granted and petitioners' motion for summary judgment should be denied. The Court concludes that turnover pursuant to the TRIA is not appropriate on the grounds that the funds are no longer "blocked assets" within the meaning of that statute. In the

alternative, the Court finds that even if the funds at issue are still "blocked assets" under the TRIA, they would not be subject to turnover because they are not the property of an agency or instrumentality of Sudan.

III.     El Nilein is not an Agency or Instrumentality of Sudan.

Section 1603(b) of the FSIA defines the term agency or instrumentality of a foreign state to mean any entity:

> 1) which is a separate legal person, corporate or otherwise, and
> 2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> 3) which is neither a citizen of a State of the United States as defined in [28 USCS § 1332(c) and (e)] nor created under the laws of any third country.

28 U.S.C.S. § 1603(b).

The TRIA does not define the term agency or instrumentality as it is used in the statute. Kirschenbaum, 830 F.3d at 132. Under controlling Second Circuit precedent:

> To demonstrate that Defendants are 'agencies or instrumentalities' of a terrorist party under the TRIA, therefore, Plaintiffs must show that each Defendant (1) was a means through which a material function of the terrorist party is accomplished, (2) provided material services to, on behalf of, or in support of the terrorist party, or (3) was owned, controlled, or directed by the terrorist party.

Id. at 135 (emphasis omitted).

"Because jurisdiction depends upon the state of things at the time the action is brought, an entity's agency or instrumentality status under the FSIA is determined at the time of the filing of the complaint." Id. at 126 (internal quotation marks, citations, and alterations omitted). The same applies to the TRIA. See id. at 136. The Second Circuit has suggested that it is possible for an entity that would have qualified as an agency or instrumentality of a foreign

state or a terrorist party at one point in time to no longer qualify at a later point in time. See id. at 136-37 (even though Iran created defendant corporation in 1973 and supervised its board in the 1980s and 1990s, summary judgment in favor of plaintiffs was denied because of a dispute over material facts regarding Iran's relationship with the corporation at the time the complaint was filed).

The parties do not dispute that El Nilein was an agency or instrumentality of Sudan, a sovereign state and terrorist party, when the assets were first blocked. (Resp'ts' CS ¶ 13.) There is no dispute that as of the commencement of this lawsuit El Nilein was no longer majority owned by the government of Sudan but that the assets nonetheless remained blocked. (Pet'rs' CS to HBUS ¶ 25.)

Petitioners contend that there is a material fact in dispute regarding whether El Nilein was still an agency or instrumentality of Sudan at the time of the filing of this action. The argument, on this record, is not meritorious. First, petitioners argue that although the Yongo-Bure Declaration states that El Nilein was partially privatized in 2006, the Court should disregard this statement because Professor Yongo-Bure was retained only to opine on the ownership of El Nilein at the time the assets were blocked. (Pet'rs' Mem. in Opp., 10-11.) This argument fails. Nothing in Rule 702, Fed. R. Evid., prohibits the admission of otherwise admissible expert testimony that is within the scope of that expert's knowledge yet outside the narrow scope for which the expert was retained.

Second, petitioners argue that even if El Nilein was no longer majority owned by Sudan at the time of the filing of the complaint, there is a dispute over whether El Nilein could still qualify as an agency or instrumentality of Sudan based on that term's definition in the FSIA or under the test set down by the Second Circuit in Kirschenbaum for the TRIA. (Pet'rs' Mem.

in Opp. 10-11.) This argument also fails. Petitioners have pointed to no evidence supporting the proposition that El Nilein meets any of the non-ownership based criteria for being an agency or instrumentality of Sudan under the FSIA or the TRIA. The only evidence they put forth regarding the relationship between Sudan and El Nilein at the time the complaint was filed is the Yongo-Burre Declaration. Thus, the only evidence before the Court bearing on this relationship is that the government of Sudan transferred 60% of the ownership of El Nilein to private investors in 2006, well before this action commenced. Petitioners could have moved under Rule 56(d), Fed. R. Civ. P., for additional discovery on this issue, but did not do so. Without other evidence, no reasonable factfinder could find that El Nilein qualified as an agency or instrumentality of Sudan under either the FSIA or the TRIA at the time the complaint was filed. Because petitioners bear the burden of proof on this matter, even if Professor Yongo-Bure's testimony was wholly inadmissible petitioners would still not have met their burden to put this fact in dispute.

Petitioners also rely on a novel theory as to how the funds may still be subject to attachment under the FSIA and the TRIA despite the fact that El Nilein was not an agency or instrumentality of Sudan at the time this action commenced. (Pet'rs' Mem. In Opp., 9-10.) Petitioners argue that, because El Nilein was an agency or instrumentality of Sudan when the assets were first blocked, as a matter of law, these assets remain the property of an agency or instrumentality of Sudan.[1] (Id.)

> The SSRs state:
>
> Except as authorized by regulations, orders, directives, rulings, instructions, licenses, or otherwise, no property or interests in property of the Government of Sudan, that are in the United States, that hereafter come within the United States, or that are or

---

[1] The Court assumes, for the sake of this argument, that the funds subject to the Petition still constitute "blocked assets" under the TRIA notwithstanding the Amendment to the SSRs.

> hereafter come within the possession or control of U.S. persons, including their overseas branches, may be transferred, paid, exported, withdrawn or otherwise dealt in.

31 C.F.R. 538.201(a). The SSRs further provide that "[a]ny transfer. . . in violation. . . of any regulation. . . involv[ing] any property or interest in property blocked pursuant to § 538.201 is null and void. . . ." 31 C.F.R. 538.202(a).

Plaintiffs point out that the SSRs prohibit the transfer of blocked assets, and that any purported transfer is null and void without the Department of Treasury retroactively certifying the transfer. (Pet'rs' Mem. In Opp., 9-10.) Because no such certification has been made regarding the blocked assets, they argue, any purported transfer of the blocked assets from the El Nilein entity wholly owned by the government of Sudan to the El Nilein entity that existed post partial privatization is null and void and thus the blocked assets are still owned by the El Nilein entity as it existed before partial privatization. (Id.)

Petitioners' argument misconstrues the meaning of the word "transfer[]" as used in the SSRs. The SSRs define the term transfer as "any actual or purported act or transaction . . . the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property. . . ." 31 C.F.R. § 538.313. In other words, a transfer is an act which conveys property. A court within this district confronted the issue of whether a corporation had been transferred by virtue of a change in control of its parent company in the analogous context of interpreting the contractual term "transferred," which the court defined as "the past tense of the verb 'transfer,'" meaning, "[t]o convey or cause to pass from one place, person, or thing to another." MassMutual Asset Finance LLC v. ACBL River Operations, LLC, 16 cv 1111, 2016 WL 6962542 at *4 (S.D.N.Y. November 28, 2016) (citing American Heritage Dictionary). In that case, the court rejected the argument that the corporation had been transferred because its

grandparent company had disposed of its interest in the corporation by conveying the corporation's parent company to a purchaser. See id. at *4. In the present case, the grandparent company is analogous to Sudan, the parent company is analogous to El Nilein, and the corporation is analogous to the blocked assets.

In MassMutual, the court reasoned that because there was no provision in the contract respecting a change in control of the corporation, it would not interpret the contract such that the transfer of the parent company, which was essentially a change in control of the corporation, would constitute a transfer of the corporation. See id. The court noted that in past cases other courts have found that contractual provisions requiring consent to transfer the shares of an entity do not require consent for the sale of that entity's corporate parents. See id. (citing Cellular Tel. Co. v. 210 E. 86th St. Corp., 839 N.Y.S.2d 476 (2007); DirecTV Latin Am., LLC v. Park 610, LLC, 691 F.Supp.2d 405, 430 (S.D.N.Y. 2010)). Lastly, the court relied on the rule that a corporate parent and its subsidiary possess a separate legal existence, such that "a corporate parent which owns the shares of a subsidiary does not own or have legal title to the assets of the subsidiary." Id. at *5 (internal quotation marks, citations, and alterations omitted).

Likewise, in the present case, the SSRs do not explicitly include the change of control of an entity within the definition of the term "transferred." Rather, the SSRs explicitly regulate the transfer of securities separate from other property: "the transfer . . . of . . . any security (or evidence thereof) registered or inscribed in the name of the Government of Sudan, and held within the possession or control of a U.S. person is prohibited. . . ." 31 C.F.R. § 538.201(b). The fact that Congress explicitly provided for the regulation of securities held by Sudan and limited the prohibition on transfer to securities "held within the possession or control of a U.S. person," id., indicates that Congress did not intend to adopt plaintiffs' unorthodox

interpretation of the term 'transfer' as it applies to blocked assets, which would, in effect, prohibit the transfer of shares of El Nilein from Sudan to private investors even though the securities are wholly outside the possession of any "U.S. person."

The concept of transfer implies a change in ownership of assets. Sudan did not own the blocked assets; El Nelein did. Sudan's divestment from El Nelein was not a transfer of the blocked assets within the meaning of that term as used in the SSRs. To hold otherwise would create internal inconsistencies within the SSRs and twist the common understanding of what constitutes the transfer of assets.

IV.  The Funds in the Remaining HBUS Account are not the Property of El Nilein.

HBUS argues that the funds in the remaining HBUS account subject to the Petition are not the property of El Nilein, and thus not subject to attachment under the FSIA or the TRIA regardless of whether El Nilein is an agency or instrumentality of Sudan. While the Court's conclusion that El Nilein was not an agency or instrumentality of Sudan at the time this action commenced is dispositive, the Court concludes in the alternative that the funds in the remaining HBUS account are not the property of El Nilein.

The funds in the HBUS account at issue are proceeds from blocked EFTs originating from El Nilein, routed through an intermediary entity to HBUS, where they were ultimately blocked pursuant to the SSRs. "[W]hether or not midstream EFTs may be attached or seized depends upon the nature and wording of the statute pursuant to which attachment and seizure is sought." Hausler v. JP Morgan Chase Bank, N.A., 770 F.3d 207, 211 (2d Cir. 2014) (quoting Export-Import Bank of U.S. v. Asia Pulp & Paper Co., 609 F.3d 111, 116 (2d Cir. 2010)) (alteration in original). Congress did not define the type of property interests subject to attachment under the TRIA or the FSIA. Hausler, 770 F.3d at 211 (TRIA); Calderon-Cardona v.

Bank of N.Y. Mellon, 770 F.3d 993, 1001 (2d Cir. 2014) (FSIA). Courts must thus look to property interests as defined by state law in order to determine what property is subject to attachment and execution under the statutes. Hausler, 770 F.3d at 212; Calderon-Cardona, 770 F.3d at 1001.

"[U]nder New York law EFTs are neither the property of the originator nor the beneficiary while briefly in the possession of an intermediary bank. As such, the only entity with a property interest in the stopped EFT is the entity that passed the EFT on to the bank where it presently rests." Hausler, 770 F.3d at 212 (internal citation and quotation marks omitted). Thus, a blocked EFT is the property of a foreign state or terrorist party, or an agency or instrumentality thereof, and subject to attachment under the TRIA or the FSIA, only where the foreign state or terrorist party, or the agency or instrumentality of the same, "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." Id.; Calderon-Cardona, 770 F.3d at 1002.

Petitioners acknowledge that the EFT was routed from El Nilein through an intermediary entity to HBUS, where it was ultimately blocked. They argue that the intermediary entity was a branch of HBUS and, therefore, El Nilein effectively transmitted the EFT directly to HBUS and the EFT is the property of El Nilein under the holdings in Hausler and Calderon-Cardona. In response, HBUS contends that the intermediary entity is established under the laws of a foreign jurisdiction and is a separate legal entity, rather than a branch of HBUS. Alternatively, HBUS contends, even if the intermediary entity was a branch of HBUS, it would still be considered a separate entity under New York law, such that the EFT was not transmitted directly from El Nilein to HBUS, and thus not subject to attachment under Hausler or Calderon-Cardona.

Under the 'separate entity rule' of New York commercial law, as stated in N.Y. U.C.C. § 4-A-105(1)(b) "[a] branch or separate office of a bank is a separate bank for purposes of this article." See also Motorola v. Standard Bank, 24 N.Y.3d 149, 160 (2014). A court within this district, when recently confronted with the issue of whether an EFT blocked midstream was the property of judgment debtor Cuba, and thus subject to turnover under the TRIA, found that because the EFT in question had passed through an intermediary branch of the bank that blocked the EFT, rather than having been transmitted directly from Cuba to the branch of the bank that instituted the block, the separate entity rule dictated that the proceeds from the EFT were not subject to turnover under Hausler. See Martinez v. Republic of Cuba, 149 F. Supp. 3d 469, 478 (S.D.N.Y. 2016). Thus, under New York property law, even if the intermediary bank was a branch of HBUS rather than a separate legal entity, the EFT would still not have been the property of El Nilein at the time it was blocked, and not subject to turnover under the TRIA or the FSIA. The Court thus need not rule on the intermediary entity's precise relationship with HBUS.

CONCLUSION

Because El Nilein is not an agency or instrumentality of Sudan and because the funds in the HBUS account at issue are not the property of El Nilein, respondents' motion for summary judgment (Dkt. No. 446) is GRANTED, and petitioners' motion for summary judgment (Dkt. No. 460) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 10, 2017