UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RICK HARRISON, et al.,

                Plaintiff,                13-cv-3127 (PKC)

    -against-                         MEMORANDUM
                                                   AND ORDER

REPUBLIC OF SUDAN,

                Defendant.
-----------------------------------------------------------x
RICK HARRISON, et al.,

                Petitioners,

-against-

AMERICAN EXPRESS TRAVEL RELATED
SERVICES, CO.; BANCO DO BRASIL, S.A.;
BANK OF AMERICA; BANK OF BARODA,
NEW YORK BRANCH; BANK OF CHINA,
NEW YORK BRANCH; BANK OF NEW YORK
MELLON; BANK OF TOKYO – MITSUBISHI
UFJ TRUST COMPANY; BARCLAYS BANK
PLC; CITIGROUP INC.; COMMERZBANK AG;
CREDIT AGRICOLE CORPORATE &
INVESTMENT BANK; CREDIT SUISSE
SECURITIES (USA) LLC; DEUTSCH BANK AG
NEW YORK; DEUTSCHE BANK TRUST CO.
AMERICAS; DOHA BANK; FEDERAL
RESERVE BANK OF NEW YORK; HABIB
AMERICAN BANK; HSBC BANK, USA, N.A.;
INTERAUDI BANK; INTESA SANPAOLO
S.P.A.; JP MORGAN CHASE & CO.; PNC
BANK, N.A.; RBS CITIZENS, N.A.; SOCIETE
GENERALE; STANDARD CHARTERED
BANK; STATE BANK OF INDIA; SUMITOMO
MITSUI BANKING CORP.; THE ROYAL BANK
OF SCOTLAND N.V.; UNITED BANK
LIMITED; WELLS FARGO BANK, N.A.,

                Respondents/Garnishees.
-----------------------------------------------------------x

P. KEVIN CASTEL, Senior District Judge:

The Central Bank of Sudan ("Central Bank") moves pursuant to Rule 60(b)(4), Fed. R. Civ. P., to vacate an order requiring the Bank of New York Mellon ("BNYM") to turnover a blocked electronic funds transfer ("EFT") purportedly belonging to the Central Bank to petitioners. (Dkt. 532). For the following reasons, the Central Bank's motion is DENIED.

BACKGROUND

The turnover order at issue stems from a default judgment entered by the District Court for the District of Columbia against the Republic of Sudan in a suit brought under 28 U.S.C. § 1605A[1] by petitioners, victims and spouses of the victims of the 2000 terrorist attack on the *U.S.S. Cole*. Harrison v. Republic of Sudan, 882 F. Supp. 2d 23 (D.D.C. 2012). Petitioners registered the default judgment in the Southern District of New York and petitioned for an order requiring various banks to turnover blocked EFTs in which the Republic of Sudan, its agencies, or its instrumentalities had an interest. (Dkt. 1 at 70–72; Dkt. 39; Dkt. 138). The petition identified BNYM as the holder of an EFT originated by, and believed to belong to, the Central Bank, an agency or instrumentality of the Republic of Sudan. (Dkt. 138-3).

BNYM filed an interpleader petition and provided notice to the Central Bank. (Dkt. 217; Dkt. 368). After the time to respond to the interpleader petition had expired without the Central Bank appearing, BNYM and petitioners entered into a stipulation of facts

---

[1] This section allows certain plaintiffs to recover damages from a foreign state for personal injury or death "caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency" if the foreign state was designated as a state sponsor of terrorism when the act occurred, or was designated a state sponsor of terrorism as a result of the act, and "either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section." 28 U.S.C. § 1605A(a), (c).

establishing that the blocked EFT was subject to turnover.  (Dkt. 506).  The Court accepted the stipulated facts and ordered BNYM to turnover the EFT to petitioners pursuant to section 201(a) of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322, 2337 (codified at 28 U.S.C. § 1610 note)).  Before BNYM complied with the order, the Central Bank entered an appearance and moved to vacate the order under Rule 60(b)(4), Fed. R. Civ. P. (Dkt. 513; Dkt. 532).

LEGAL STANDARD

Rule 60(b)(4), Fed. R. Civ. P., provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void."  A judgment is void, and relief is warranted, "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law."  Grace v. Bank Leumi Tr. Co. of N.Y., 443 F.3d 180, 193 (2d Cir. 2006) (quoting Texlon Corp v. Mfrs. Hanover Commercial Corp., 596 F.2d 1092, 1099 (2d Cir. 1979)).

DISCUSSION

I. Terrorism Risk Insurance Act

The Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611, "provides the sole basis for obtaining jurisdiction over a foreign state in federal court," and "subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity."  Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 435, 439 (1989) (quoting Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 493 (1983)).  The Second Circuit has extended this principle, holding that "a court may not exercise subject matter jurisdiction over the property of a foreign state defendant"—not just

over the foreign state itself—"unless that property is subject to attachment under the FSIA." NML Capital, Ltd. v. Banco Central de la Republica Argentina, 652 F.3d 172, 186 (2d Cir. 2011). The TRIA provides an exception to FSIA immunity, allowing a party that has obtained a judgment against a "terrorist party" that "is not immune under section 1605A" of the FSIA to execute against "the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)." TRIA § 201(a); see Weinstein v. Islamic Republic of Iran, 609 F.3d 43, 50 (2d Cir. 2010) ("Section 201(a) of the TRIA provides courts with subject matter jurisdiction over post-judgment execution and attachment proceedings against property held in the hands of an instrumentality of the judgment-debtor, even if the instrumentality is not itself named in the judgment.").

The Central Bank argues that the EFT is not a blocked asset "of" the Central Bank, rendering the TRIA inapplicable. The Second Circuit has instructed that to assess a party's property interest in a blocked EFT under the TRIA, courts must look to the governing law of the jurisdiction where the bank holding the EFT is located. Hausler v. JP Morgan Chase Bank, N.A., 770 F.3d 207, 211–12 (2d Cir. 2014) (per curiam). Because BNYM is located in New York, New York law applies. Id. at 212.

New York has adopted the Uniform Commercial Code ("U.C.C."), which provides a "comprehensive body of law that defines the rights and obligations that arise from wire transfers." Export-Import Bank of U.S. v. Asia Pulp & Paper Co., 609 F.3d 111, 118 (2d Cir. 2010) (quoting Banque Worms v. BankAmerica Int'l, 570 N.E.2d 189, 193 (N.Y. 1991)). New York did so with the intent that the U.C.C. would function as the "exclusive means of determining the rights, duties and liabilities of the affected parties" in an EFT. N.Y. U.C.C. Law § 4-A-102 cmt. Under the U.C.C., an originator normally has a property interest in a blocked

EFT only if it "transmitted the EFT directly to the bank where the EFT is held pursuant to the block." Hausler, 770 F.3d at 212 (quoting Calderon-Cardona v. Bank of N.Y. Mellon, 770 F.3d 993, 1002 (2d Cir. 2014)). If the originator did not pass the EFT directly to the intermediary bank where the EFT is held, then the bank that did directly transfer the EFT to the intermediary bank has the only property interest in the EFT. Id.

The Central Bank has provided evidence demonstrating that, contrary to a stipulation between BNYM and petitioners, the Central Bank did not pass the EFT directly to BNYM. (Dkt. 535). Rather, the Central Bank, in a payment order, instructed the Federal Reserve Bank of New York ("FRBNY") to route the EFT through BNYM, which was to then transfer the EFT to Al Shamal Khartoum, a bank where the Sudanese Libyan Investment and Development Company (the intended beneficiary) held an account. (Dkt. 533 at 4; Dkt. 535-6). Once BNYM received the EFT, it did not execute the order because the Libyan Sanction Regulations, 31 C.F.R. Part 550, precluded it from doing so. (Dkt. 533 at 5). BNYM subsequently placed the EFT in a new blocked account pursuant to the Sudanese Sanctions Regulations, 31 C.F.R. Part 538, where the EFT now rests. (Dkt. 138 ¶ 45; Dkt. 533 at 1).

This evidence, however, does not establish that the Court lacked jurisdiction to order the turnover of the EFT. If the EFT is not a blocked asset of the Central Bank under the TRIA, then it is also not "property in the United States of a foreign state" that is "immune from attachment[,] arrest[,] and execution." In Calderon-Cardona v. Bank of N.Y. Mellon, the Second Circuit addressed the nearly identical language found in 28 U.S.C. § 1610(g), which states that "the property of a foreign state against which a judgment is entered under section 1605A . . . is subject to attachment in aid of execution." The court determined that the EFT would not be the "property of a foreign state" if the foreign state did not send the EFT directly to the bank that

held it pursuant to the applicable sanctions, exactly what the Central Bank contends occurred here. Calderon-Cardona, 770 F.3d at 1001–02. It follows that the EFT would also not be "property in the United States of a foreign state" entitled to immunity under the FSIA, 28 U.S.C. § 1609, as "words repeated in different parts of the same statute generally have the same meaning," Law v. Siegel, 134 S. Ct. 1188, 1195 (2014). Thus, if the Court accepts the Central Bank's argument, then the EFT would not be immune from execution under the FSIA, and the execution of the judgment against the EFT would implicate concerns only on the merits of the turnover order—not the jurisdictional concerns necessary to obtain relief under Rule 60(b)(4), Fed. R. Civ. P.—because the EFT would not fall within the strictures of section 1609.

The FSIA also affords foreign states, their agencies, and their instrumentalities immunity "from the jurisdiction of the courts of the United States," but the Court did not need jurisdiction over the Central Bank to order BNYM to turnover the EFT. 28 U.S.C. § 1604. Rule 69, Fed. R. Civ. P., directs the federal courts to apply state court procedures to enforce a money judgment. Under New York law, jurisdiction over the judgment debtor is not necessary to order the turnover of assets held by a third party. Koehler v. Bank of Bermuda Ltd., 911 N.E.2d 825, 830–31 (N.Y. 2009; see also Peterson v. Islamic Republic of Iran, 876 F.3d 63, 91 (2d Cir. 2017) (noting that under New York law, an enforcement proceeding against a garnishee that is not a foreign state within the meaning of the FSIA does not implicate the jurisdictional immunity found in section 1604 of the FSIA); Motorola Credit Corp. v. Uzan, 978 F. Supp. 2d 205, 211 (S.D.N.Y. 2013) ("[F]or purposes of post-judgment attachment, a New York court need[s] only personal jurisdiction over the garnishee."). Thus, even if the Court accepts that the EFT was not a blocked asset of the Central Bank, the Court had jurisdiction to order BNYM to turnover the EFT.

The Central Bank's immunity from jurisdiction under section 1604, however, is relevant to BNYM's interpleader action, in which it named the Central Bank as a third-party respondent. (Dkt. 217). The interpleader action resulted in an order permanently enjoining the Central Bank "from instituting or pursuing any other pending or future legal actions or proceedings . . . against BNY[M] with respect to the Blocked Account and the funds therein." (Dkt. 506 ¶ 6); see Republic of Philippines v. Pimentel, 553 U.S. 851, 871 (2008) (stating that if a foreign state invokes immunity in an interpleader action and is thereby dismissed, then the foreign state "would not be bound by the judgment"). If the Central Bank is correct, and the Court did lack subject matter jurisdiction over the interpleader action as it concerned the Central Bank, the Court notes that the practical effect of an order dismissing the interpleader action for lack of subject matter jurisdiction would appear to be no different than the injunction the Court entered; the Central Bank would not be able to recover from BNYM because, as explained below, an originator of an EFT generally may initiate an action to recover the EFT against only the entity to which it directly passed the EFT—here, FRBNY. Grain Traders, Inc. v. Citibank, N.A., 160 F.3d 97, 101 (2d Cir. 1998). In any event, for the reasons stated below, the Central Bank is incorrect that TRIA does not apply. 102

Under New York law, an EFT is canceled by operation of law if it is not executed by the intermediary bank by the close of the fifth business day after the "execution date," N.Y. U.C.C. Law § 4-A-211(4), which, "unless otherwise determined, is the day the order is received," id. § 4-A-301(2). In the normal course, a cancellation obligates the receiving bank to refund the bank from which it received the EFT, and the originator may collect only from the bank it initially sent the EFT. See id. § 4-A-402(4); Grain Traders, 160 F.3d at 101 (holding that, generally, the U.C.C. requires an "orderly unraveling of a funds transfer" when a

cancellation occurs, meaning that each entity involved in the transfer can recover only from the entity to which it directly passed the EFT).  To place this in more concrete terms, FRNBY would normally be the only entity that could recover from BNYM, and the Central Bank would generally be allowed to recover only from FRNBY.

But that is not the case when the originator directs the bank that receives the payment order to route the EFT through a specific intermediary bank.  If that occurs, and the intermediary bank "is obliged to refund payment" because the transfer is canceled "but is unable to do so because [a refund is] not permitted by applicable law or because the bank suspends payments," then the bank that transferred the funds to the intermediary bank in compliance with the payment order "is entitled to receive or retain payment from the [originator]," and the originator "is subrogated to the right of the bank that paid the intermediary bank to refund," shifting the risk of loss to the originator.  N.Y. U.C.C. Law § 4-A-402(5); see also Grain Traders, 160 F.3d at 102 (observing that the effect of section 4-A-402(5) is that "the party that designated the failed bank bears the burden of recovery by being subrogated to the right of the sender that paid the failed bank").  In other words, the originator is substituted for the transferring bank and becomes the only entity with a property interest in the held EFT.

Here, the Central Bank instructed FRBNY to transfer the EFT to BNYM.  Although FRBNY, as the entity that directly transferred the EFT to the intermediary bank that now holds the EFT, would normally be the only entity with a property interest in the EFT, the Central Bank is subrogated to that right because it directed FRBNY to route the EFT through BNYM, leaving the Central Bank as "the only entity with a property interest in the stopped EFT."  Hausler, 770 F.3d at 212 (quoting Calderon-Cardona, 770 F.3d at 1002).  As the only

entity with a property interest—the only entity that may recover the EFT from BNYM[2]—the Central Bank cannot claim that the EFT is not a blocked asset of the Central Bank. Id. The Court concludes that the TRIA applies.

The Court pauses briefly to stress the limited reach of its holding. Subrogation of an originator under New York law applies only when the originator specifies the use of the intermediary bank that cancels the EFT, and it applies only when the intermediary bank is precluded from refunding the payment. Of course, an erroneous attachment might occur, which would operate to cancel the EFT and give rise to a right to refund, but the Second Circuit has made clear that the cancellation of an EFT through an erroneous attachment order does not allow a creditor to attach a property interest that exists solely through mistake. Allied Mar., Inc. v. Descatrade SA, 620 F.3d 70, 76 n.5 (2d Cir. 2010); Scanscot Shipping Servs. GmbH v. Metales Tracomex LTDA, 617 F.3d 679, 682 (2d Cir. 2010) (rejecting a creditor's "attempt to benefit from [the intermediary bank's] reaction to a tainted attachment order" through attaching a "suspense account [created] solely as a result of an order of attachment relating to funds now determined to be beyond the reach of the district court").

II. Property of a Central Bank Held for its Own Account

The Central Bank argues that if the TRIA applies, the EFT is immune from execution as "property . . . of a foreign central bank . . . held for its own account." 28 U.S.C. § 1611(b)(1). This argument lacks merit. The TRIA applies "[n]otwithstanding any other provision of law." TRIA § 201(a). The Supreme Court, relying on this phrase, observed that the "FSIA's central-bank immunity provision . . . limits [section] 1610(g), but not the TRIA." Bank Markazi v. Peterson, 136 S. Ct. 1310, 1318 n.2 (2016). Because the TRIA applies here (or

---

[2] Indeed, the Central Bank concedes as much in its briefing, stating that the EFT "should be returned for the benefit of the Central Bank" if their motion to vacate is granted. (Dkt. 533 at 10).

because, under the Central Bank's theory, the EFT is not the property of a foreign central bank), the central-bank immunity provision does not apply.

CONCLUSION

For the foregoing reasons, the Central Bank's motion to vacate (Dkt. 532) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 5, 2018